
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TROY BROWER, an individual, | ) | |
| | ) | No. 36442-9-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL HOERNER and AUGUSTA | ) | UNPUBLISHED OPINION |
| HOERNER, husband and wife, and the | ) | |
| marital community thereof, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Troy Brower appeals a defense verdict following a bench trial.

Mr. Brower sued Daniel Hoerner after Hoerner refused to recognize him as having a

continuing interest in a limited liability company in which both men were originally

members. Most of Mr. Brower's briefing on appeal reargues the evidence, but it was for

the trial court to assess credibility and persuasiveness. Mr. Brower fails to demonstrate

an insufficiency of evidence or legal error. We affirm.

## STANDARD OF REVIEW

The nature of our review of a bench trial is well settled. Appellate review is limited to determining whether substantial evidence supports the trial court's findings of fact and, if so, whether the findings support its conclusions of law. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. *Id.* We defer to the trial court's determinations of the weight and credibility of the evidence. *In re Estate of Barnes*, 185 Wn.2d 1, 9, 367 P.3d 580 (2016). We need only consider evidence favorable to the prevailing party. *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011) (citing *Bland v. Mentor*, 63 Wn.2d 150, 155, 385 P.2d 727 (1963)). Unchallenged findings are verities on appeal. *Id.*

Our rules of appellate procedure impose requirements on parties challenging a trial court's factual findings. RAP 10.3(a)(4) and 10.3(g) require a *separate* assignment of error for each finding of fact a party contends was improperly made, accompanied by issues pertaining to the assignment of error. Additionally, "[w]e need not review challenged findings without citation to the record showing why the findings are not supported by the record." *In re Welfare of H.S.*, 94 Wn. App. 511, 520, 973 P.2d 474 (1999) (citing *In re Discipline of Haskell*, 136 Wn.2d 300, 310-11, 962 P.2d 813 (1998)); RAP 10.3. We review only findings that are argued in an appellant's brief. *H.S*, 94 Wn. App. at 520.

Mr. Brower's first assignment of error identifies 24 findings of fact he contends are not supported by substantial evidence. He does not include the issues related to each of the challenged findings. In the balance of Mr. Brower's briefing, he devotes argument to only two challenged findings of fact.

Where the rules are violated but the nature of the challenge is perfectly clear and the challenged ruling is set forth in the appellate brief, we may review the merits of the appeal. *E.g.*, *Goehle v. Fred Hutchinson Cancer Research Ctr.*, 100 Wn. App. 609, 613-14, 1 P.3d 579 (2000). This is not such a case. The nature of Mr. Brower's challenges to 22 findings are not clear. We treat Mr. Brower as effectively assigning error to the two findings he addresses with argument: findings of fact (FF) 33 and 41.[1]

## FACTS AND PROCEDURE

The following material facts are among those the trial court found were proved at trial. The court observed in making its findings of fact that "[v]irtually all of the critical testimonial evidence was conflicting." Clerk's Papers (CP) at 516. Unless otherwise indicated, the factual findings were not effectively challenged and are verities on appeal.

---

[1] In listing the 24 findings to which he assigned error, Mr. Brower did not include finding of fact 41, but it is clear he intended to. His otherwise numerically ordered list of challenged findings recites "40", then "4", and then "45." Appellant's Opening Br. at 4. Finding of fact 41 is discussed throughout Mr. Brower's briefing, while finding of fact 4 is not mentioned and addresses a fact never disputed at trial.

3

Troy Brower and Daniel Hoerner were longtime friends who, sometime before October 2013, decided to reopen and revive The Big Dipper, a music venue that had formerly operated in Spokane. FF 1, 3, 4. (These findings and the remaining findings cited hereafter all appear at CP 516-23.) To that end, in October 2013, the parties formed a general partnership. FF 5. They did not have a written partnership agreement but agreed they would each provide an equal capital contribution to fund the venture, and would equally share expenses, profits, and losses. FF 6-8. Shortly after or contemporaneous with agreeing to be partners, Mr. Brower and Mr. Hoerner formed a limited liability company, the Big Dipper, LLC (the LLC). FF 9. Their previous agreement regarding a partnership was carried over to the limited liability company. FF 10.

The pair then encountered conflicts that led to the collapse of their business relationship. FF 19-20. One was Mr. Hoerner's concern with the quality of repair, rehabilitation and remodel work that Mr. Brower did or was to do to the venue, which Mr. Hoerner contended was sometimes not done or had to be redone by others. FF 21-22. Another was Mr. Brower's breach of an understanding that he would refrain from using or distributing marijuana in or near the Big Dipper, something Mr. Hoerner was concerned could jeopardize its liquor license. FF 23-26. A third was Mr. Brower entrusting his wife or significant other to serve alcohol, which Mr. Hoerner believed she was misappropriating from the business. FF 27-28.

4

Mr. Hoerner came to believe that Mr. Brower had forfeited or dissolved his partnership/membership interest by failing to contribute services, failing to contribute capital, and distributing marijuana, along with other conduct or failures. FF 31. The trial court found (but Mr. Brower disputes) that on September 20, 2014, Mr. Hoerner wrote Mr. Brower that he needed to remove himself from the partnership and the limited liability company. FF 33. On or near that date, Mr. Brower and his wife confronted Mr. Hoerner in The Big Dipper, yelling or shouting disparaging remarks at Mr. Hoerner in front of patrons and staff. FF 34-35.

On or near September 20, 2014, and following this confrontation, Mr. Brower posted an announcement on The Big Dipper's Facebook page that he was no longer part of The Big Dipper. FF 37. He stated in part, "I am no longer the co-owner of The Big Dipper," "I am burned and out," "I am glad to be gone," and "Time for some rest and solitude." FF 37.

The trial court found that on or near September 26, 2014, "Mr. Hoerner memorialized his acceptance of Mr. Brower's September 20, 2014 written dissociation by filing a Change in Governing People, Percentage Owned, and/or Stock/Unit Ownership with the Secretary of State." FF 41. Mr. Brower assigns error to this finding. Mr. Hoerner thereafter attempted to coordinate the return of Mr. Brower's personal property but Mr. Brower did not pick it up and, when Mr. Hoerner arranged for it to be delivered

to him, Mr. Brower declined to accept it. FF 42-43. Mr. Brower testified at trial that he declined to accept it because the delivery conflicted with his work. FF 43.

At trial, Mr. Brower testified that his carpentry, repair and remodel work to The Big Dipper was worth $50,000. FF 49. This was disputed by Mr. Hoerner, however, and in the absence of any supporting invoices, receipts or corroboration, the trial court found that Mr. Brower's evidence of his capital contribution was insufficient. FF 50-51.

Mr. Brower's evidence at trial included business valuation testimony from Joe Mayo. Mr. Mayo, a lawyer and certified public accountant, described himself as someone who buys, sells and operates businesses, although he acknowledged he had not previously valued a music or event venue. FF 55, 58. A year-end profit and loss statement for the LLC showed a net loss for 2014 of $69,179, and Mr. Mayo did not express an opinion of the LLC's value at year-end 2014. FF 53, 60. Instead (and unaddressed by the trial court's findings of fact), Mr. Mayo was asked by Mr. Brower to express an opinion of value based on the LLC's operations from 2015 through 2017.[2] The trial court observed in its findings that most of the questions posed to Mr. Mayo by Mr. Brower's lawyer were leading. FF 56. It pointed out in its conclusions of law that it

---

[2] "A trial court is not required to make findings of fact on all matters about which there is evidence in the record. Only those findings which establish the existence or non-existence of determinative factual matters need be made." *Maehren v. City of Seattle*, 92 Wn.2d 480, 487-88, 599 P.2d 1255 (1979).

6

was not bound to accept the testimony of any witness, including uncontroverted testimony or the testimony of experts.

The trial court concluded that Mr. Brower failed to carry his burden of proof with respect to any of his claims and dismissed them with prejudice. Mr. Brower appeals.

ANALYSIS

Mr. Brower assigns error to findings of fact that he contends are not supported by substantial evidence. As earlier explained, we will deem his briefing sufficient to state a challenge to two findings of fact: 33 and 41. He assigns error to the trial court's conclusions that he failed to prove his declaratory judgment, breach of contract, and fraud claims. We turn first to his challenge to the findings.[3]

I.     SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FINDINGS

*Finding of Fact 33.*  Mr. Brower assigns error to finding of fact 33, which states "Mr. Hoerner wrote Mr. Brower that he needed to remove himself from the partnership and limited liability company," citing as support exhibit D-119, an e-mail chain between the parties. CP at 519.

It is more accurate to say that Mr. Hoerner claimed in the opening e-mail to have *already* removed Mr. Brower as a member. Mr. Brower responded that he, too, wanted

---

[3] Mr. Brower also includes an assignment stating that the trial court committed error by finding he was not entitled to damages. If he failed to prove any of his claims, it follows that he was not entitled to damages.

to end their relationship but suggested that they should arrive at a value for the business so that one could buy the other out. In reply, Mr. Hoerner accused Mr. Brower of violating their agreement in many ways including by not providing matching resources, and "ultimately, you have expelled yourself from the partnership." Ex. D-119. In determining whether the findings of fact support the conclusions of law, we disregard the finding that Mr. Hoerner said Mr. Brower "needed to remove *himself*." FF 33 (emphasis added).

> *Finding of Fact 41.* Finding of fact 41 states:
>
> As indicated, on or near September 26, 2014, Mr. Hoerner memorialized his acceptance of Mr. Brower's September 20, 2014 written dissociation by filing a Change in Governing People, Percentage Owned, and/or Stock/Unit Ownership with the Secretary of State.

CP at 520.

Mr. Brower makes no argument specific to finding 41 in his opening brief, but an argument in his reply brief identifies an objection that appears in his more general opening argument. His reply brief states:

> The trial court abused its discretion in its Finding of Fact No. 41 by finding that Mr. Brower voluntarily disassociated himself from the Big Dipper, and that Mr. Hoerner simply acquiesced to Mr. Brower's disassociation by filing the necessary paperwork with the Secretary of State on September 26, 2014. The document referred to in the court's finding is a document stripping Mr. Brower's equal ownership interest in the Big Dipper. This document was signed and dated on August 28, 2014, almost a month prior Mr. Brower's Facebook post or any of the relevant events leading to the removal of Mr. Brower by police.

8

Reply Br. at 10 (citations omitted).

While the date "8/28/14," in Mr. Hoerner's handwriting, appears next to his signature on the "Change in Governing People" document, Mr. Hoerner testified he actually signed and completed the document on September 26, 2014. Ex. D-110. He testified that he executed it at the direction of his attorney, with whom he did not begin working until September 21, 2014. The document is stamped as received by the Secretary of State's Office on September 26, 2014. While Mr. Hoerner could not explain the discrepancy in the date, the receipt stamp and his testimony provided substantial evidence that he signed the document on or near September 26, 2014.

Mr. Brower also challenges whether evidence supports the trial court's reference to his September 20 "written dissociation." FF 41. Whether Mr. Brower's words and actions caused him to be dissociated as a member of the LLC *as a legal matter* presents an issue of law, the determination of which does not belong in the findings of fact. Relevant to the statutory determination is whether Mr. Brower took voluntary action to withdraw, however, which is a factual question that belongs in the findings of fact.

"Dissociate" has a common, nonlegal meaning equivalent to taking voluntary action to withdraw. It is defined as meaning:

> **1 :** To cut off (as from society) **:** separate esp. from association or union with another **:** disconnect from association with another.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 657 (1993).

9

The trial court's reference to "Mr. Brower's September 20, 2014 written dissociation" in finding of fact 41 is most reasonably read as using the common, nonlegal meaning of dissociate—in other words, as the trial court characterizing Mr. Brower's Facebook post as an act of separating or disconnecting from association with Mr. Hoerner. Among statements made by Mr. Brower in the post to which the trial court attached significance were, "I am no longer the co-owner of The Big Dipper," "I am burned and out," "I am glad to be gone," and "Time for some rest and solitude." FF 37. Given the parties' conflicts, their mutual recognition of the need to separate, Mr. Brower's inability to demonstrate a capital contribution, and ultimately, Mr. Brower's Facebook post, substantial evidence supports the trial court's characterization of the Facebook post as a written "dissociation" within the common meaning of that word.

II.     THE TRIAL COURT'S FINDINGS SUPPORT ITS CONCLUSION THAT MR. BROWER WAS NO LONGER A 50 PERCENT OWNER OF THE LLC

Mr. Brower sought a declaratory judgment "that he is a 50% member in The Big Dipper, LLC and is entitled to all rights provided for by Washington law." CP at 5. He challenges the trial court's conclusion of law 5, which states:

> Mr. Brower was a member of The Big Dipper, LLC up until approximately September 20, 2014 or September 26, 2014, when he dissociated in writing and his dissociation was memorialized with the Secretary of State.

CP at 523.

Chapter 25.15 RCW is the Washington limited liability company act. RCW

25.15.131 provides in relevant part:

> (1) A person is dissociated as a member of a limited liability company upon the occurrence of one or more of the following events:
>
> (a) The member dies or withdraws by voluntary act from the limited liability company as provided in subsection (2) of this section;
>
> . . . .
>
> (2) A member may withdraw from a limited liability company at the time or upon the happening of events specified in and in accordance with the limited liability company agreement. If the limited liability company agreement does not specify the time or the events upon the happening of which a member may withdraw, a member may not withdraw from the limited liability company without the written consent of all other members.

A limited liability company agreement can be oral or implied. RCW 25.15.006(7).

The trial court determined in its conclusions of law 5 and 6 that Mr. Brower was

disassociated as a result of (1) his voluntary act of posting a written dissociation and (2)

Mr. Hoerner's written consent in the form of the change in governing people document

that was signed and filed with the Secretary of State on September 26, 2014. The trial

court's findings of fact support these conclusions of law.

III.   THE TRIAL COURT'S FINDINGS SUPPORT ITS CONCLUSION THAT MR. BROWER
       FAILED TO PROVE A BREACH OF CONTRACT

Mr. Brower's complaint alleged that the parties "entered into an agreement to

jointly purchase and operate the 'Big Dipper'" and "[i]n order to do this, they formed a

limited liability company, 'The Big Dipper, LLC.'" CP at 4. His trial brief informed the

11

court that the breach alleged was "removing Brower as a member/owner of the LLC with various State agencies without Brower's knowledge or consent." CP at 367.

The elements of a breach of contract action that must be established by the plaintiff are (1) a duty imposed by the contract that (2) was breached, with (3) damages proximately caused by the breach. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). A plaintiff who has substantially performed his own obligations under a contract may maintain an action on the contract, but when a plaintiff has materially breached the contract or breached it in a manner going to its root or essence, performance by the defendant is excused. *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wn. App. 205, 220, 317 P.3d 543 (2014).

The trial court found that Mr. Brower presented insufficient evidence of making his capital contribution. It concludes that he had an opportunity to perform but failed to perform under the parties' contract.

In addition, damages proximately caused by the breach is an essential element of a breach of contract claim. The asserted breach by Mr. Hoerner—removal of Mr. Brower as a member—was accomplished on September 26, 2014. The trial court concluded that Mr. Brower's failure to present evidence of either his capital contribution or a value for the LLC in 2014 resulted in insufficient evidence of damages. The trial court's findings of fact support its conclusions of law on both scores.

IV.     THE TRIAL COURT'S FINDINGS SUPPORT ITS CONCLUSION THAT MR. BROWER
        FAILED TO PROVE FRAUD

Finally, Mr. Brower argues the court erred when it found he had not proved his

fraud claim.

A plaintiff asserting a claim for fraud must prove: "(1) a representation of an

existing fact, (2) the fact is material, (3) the fact is false, (4) the defendant knew the fact

was false or was ignorant of its truth, (5) the defendant intended the plaintiff to act on the

fact, (6) the plaintiff did not know the fact was false, (7) the plaintiff relied on the truth of

the fact, (8) the plaintiff had a right to rely on it,` and (9) the plaintiff had damages."

*Baddeley v. Seek*, 138 Wn. App. 333, 338-39, 156 P.3d 959 (2007).  Each element must

be proved by evidence that is clear, cogent, and convincing.  *Id.* at 339.

As earlier recounted, the trial court found that Mr. Hoerner believed that Mr.

Brower forfeited or dissolved his partnership/membership interest by failing to contribute

services, failing to contribute capital, distributing marijuana and other conduct or failures.

FF 31.  On that basis, it concluded that Mr. Brower failed to prove that in making

statements to that effect, Mr. Hoerner knew they were false or was ignorant of their truth.

It also concluded, as it had with respect to the contract claim, that Mr. Brower presented

insufficient proof of damages.  The trial court's findings of fact support its conclusions of

law.[4]

---

[4] Mr. Brower argues that the trial court did not address all of the instances in

No. 36442-9-III
*Brower v. Hoerner*


Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:


_____
Lawrence-Berrey, J.


_____
Fearing, J.

---

which Mr. Hoerner uttered allegedly false statements about his membership status to third parties. But to constitute fraud, the defendant must have intended *the plaintiff* to act on a false statement, *the plaintiff* must not know that the statement is false, *the plaintiff* must have relied on the truth of the fact, and *the plaintiff* must have had a right to rely on it. *Baddeley*, 138 Wn. App. at 338-39. Statements to third parties were possibly germane to Mr. Brower's tortious interference claim (the dismissal of which he does not appeal) but they cannot provide a basis for a fraud claim.

14