24 P.3d 1040 (2001)
143 Wash.2d 840
In the Matter of the Disciplinary Proceeding Against Santiago Eduardo JUAREZ, an Attorney at Law.
No. 05686-2.
Supreme Court of Washington, En Banc.
Argued February 27, 2001.
Decided June 14, 2001.
*1043 Leland G. Ripley, Attorney at Law, Seattle, WA, for Santiago Eduardo Juarez.
Washington State Bar Association, Jonathan Henry Burke, Seattle, WA, for State Bar Association. *1041
*1042 SMITH, J.
Santiago Eduardo Juarez, an attorney at law, asks this court to review the determination of the Disciplinary Board of the Washington State Bar Association that he be suspended from the practice of law for 18 months and that he continue the practice of law as a member of the Washington State Bar Association only on the condition that he be supervised by another attorney licensed to practice in the State of Washington. We granted review. We approve the determination by the Disciplinary Board.

*1044 QUESTION PRESENTED

The question presented in this case is whether the Disciplinary Board had sufficient facts to justify its conclusions and whether the Board imposed an appropriate sanction against Santiago Eduardo Juarez, applying the presumptive sanctions recommended by the ABA Standards for Imposing Lawyer Discipline.

STATEMENT OF FACTS
Respondent Santiago Eduardo Juarez was admitted to the practice of law in the State of Washington on October 25, 1974.[1] A formal complaint filed by Disciplinary Counsel of the Washington State Bar Association on April 24, 1998 charged him with misconduct in 11 counts involving personal and client matters.[2]
Under Rule of Lawyer Discipline (RLD) 4.10 a hearing was held before Kelby D. Fletcher, Hearing Officer, on October 21, 22 and 29, 1998 at the offices of the Washington State Bar Association in Seattle, Washington.[3]
Respondent Juarez asks this court to determine the correctness of findings of fact, conclusions of law and sanctions recommended by the Disciplinary Board of the Washington State Bar Association, the majority of whom, by a vote of 11-1, agreed with the findings, conclusions and recommendations of the hearing officer. The scope of this review, necessitates verbatim recitation of substantially the entire text of the complaint and the findings of fact, conclusions of law and recommended sanctions.
The complaint included the following charges (excluding the Dorsey Matter):
Respondent's Traffic Matter:
COUNT I: Respondent's conduct in failing to appear in court at scheduled hearings in his criminal cases as required by CrRLJ 3.4(a) and by Renton Municipal Court violated Rule of Professional Conduct ("RPC") 3.4(c), and subjects Respondent to discipline pursuant to RLD 1.1(f) and/or RLD 1.1(b).
Respondent's Prior Suspension Matter:
COUNT II: Respondent's failure to submit a sworn affidavit reciting his compliance with the duties upon suspension and disclosing the names and addresses of clients, parties, or courts notified of the suspension and attaching the letter(s) to them violated RLD 8.3 and subjects Respondent to discipline pursuant to RLD 1.1(j).
The Joaquin Vaca (aka Joaquin Baca-Amescua) Matter:
COUNT III: Respondent's failure to pay $1,000 to the Lawyer's [F]und for Client Protection by March 27, 1996 as he represented in obtaining reinstatement of his license to practice law constitutes an act of dishonesty, deceit, and/or misrepresentation in violation of [RPC] 8.4(c) and subjects Respondent to discipline pursuant to RLD 1.1(i) and/or RLD 1.1(f) and/or RLD 1.1(j).
COUNT IV: Respondent's failure to timely respond to Disciplinary Counsel's request for response to the grievance that Respondent did not comply with his representation to the Lawyer's Fund for Client Protection violated RLD 2.8 and *1045 subjects Respondent to discipline pursuant to RLD 1.1(j).
The James Neal Suichang Matter:
COUNT VII:[4] Respondent's failure to diligently pursue Mr. Suichang's appeal violated [Rules of Professional Conduct] RPC 1.3, and subjects Respondent to discipline pursuant to RLD 1.1(j).
COUNT VIII: Respondent's failure to promptly turn over Mr. Suichang's file to WADA [Washington Appellant Defender Association] upon his suspension violated RLD 8.1(a)(4), and subjects Respondent to discipline pursuant to RLD 1.1(i) and/or violated RPC 1.15(d), and subjects Respondent to discipline pursuant to RLD 1.1(j).
COUNT IX: Respondent's failure to notify the Court of Appeals of his suspension violated RLD 8.1(a)(2), and subjects Respondent to discipline pursuant to RLD 1.1(j).
COUNT X: Respondent's failure to pay the terms imposed by the Court of Appeals violated RPC 3.4(c), and subjects Respondent to discipline pursuant to RLD 1.1(i).
Respondent's Unfitness to Practice Law Matter:
COUNT XI: Respondent's conduct as described in paragraphs 1-150 above demonstrates that Respondent is unfit to practice law and subjects Respondent to discipline pursuant to RLD 1.1(p).[5]
On August 11, 1998, Hearing Officer Fletcher approved a stipulation for bifurcation of the disciplinary proceedings under RLD 4.12(b).[6]
On December 9, 1998, Hearing Officer Fletcher signed findings of fact and conclusions of law.[7] The findings of fact (excluding the Dorsey Matter) stated:
1.1 The operative facts are not generally disputed. Respondent admitted the vast majority of assertions found in the formal Complaint. Bar counsel voluntarily dismissed counts V and VI of the formal Complaint. Because of that dismissal, only paragraphs 25, 27, 36, 37, 39, 40, 59, 60, 120, 127, 131, 144, 145 through 148, and 151 were disputed in whole or in part.[8]

COUNT I
2.1 Respondent was twice stopped in 1993 while driving a car without a license. After the first offense, he failed to appear for his arraignment. He was then arrested for that, posted bail, released and waived arraignment. After the second citation, respondent waived arraignment and sought to consolidate the pretrial hearings in both cases to September 1, 1993. This was granted by a judge of Renton Municipal Court. Respondent was then acting without benefit of counsel.
2.2 On August 31, 1993 a lawyer, Frank Calero, appeared and moved to continue the September 1, 1993 pretrial hearing because of professional obligations in court for himself and respondent, his client. Neither respondent nor Mr. Calero appeared on September 1, 1993 when the court granted the motion to continue the pretrial hearings in both traffic cases to September 15, 1993.

*1046 2.3 Neither respondent nor his lawyer appeared in Renton Municipal Court on September 15, 1993. The court forfeited bail on the earlier failure to appear on the matter and issued another bench warrant which resulted in respondent's arrest on October 13, 1993.
2.4 After respondent pled guilty to the two traffic offenses, a sentencing date of March 10, 1994 was set. On that date, neither respondent nor his lawyer personally appeared. However, calls were made to court on March 9, 1994 and on March 10, 1994 indicating that respondent had to be in King County Superior Court to represent a client and could not personally appear in the sentencing court. Municipal court judges usually accommodate counsel who are scheduled to appear in their courts and in superior or federal courts. Sentencing was then deferred to April 14, 1994, but on that date neither respondent nor his lawyer appeared because they were in other courts. The formal complaint does not charge with respect to the April 14, 1994 failure to appear.
2.5 Respondent's failure to appear at an arraignment and at a pretrial hearing on September 15, 1993 exhibited reckless disregard for obligations owed to a court which had personal jurisdiction over him. However, it has not been demonstrated by a clear preponderance of the evidence that respondent knowingly disobeyed his obligation to appear in court. Respondent's failure to appear on September 1, 1993 and March 10, 1994 and April 14, 1994 demonstrated disregard for court obligations due to conflicting professional obligations.

COUNT II
3.1 Respondent entered into a written stipulation for discipline in December 1994. The stipulation required a payment plan for restitution of money owed to a client and for suspension of respondent's license to practice law for one year. The Washington Supreme Court approved the stipulation by way of an order dated February 15, 1995. The order required suspension of respondent's license "effective immediately" and allowed reinstatement upon completion of specified conditions.
3.2 Upon receipt of the Supreme Court's order, the Washington State Bar Association sent a letter to respondent in care of his lawyer. The letter advised him of his obligations under Title 8 of the Rules of Lawyer Discipline (RLD) arising from the suspension of his license to practice law. In a letter to respondent mailed on February 27, 1995, his lawyer advised respondent immediately to stop practicing law in Washington state and to comply with the requirements of the RLD. The letter also informed respondent, "There are steps we must go through and an affidavit which must be filed." A copy of the Bar Association letter of February 17, 1995 was enclosed with this letter.
3.3 On February 21, 1995, respondent wrote to the Pierce County Sheriff advising that he then represented an individual, Montalvo, in a forfeiture action. At the time respondent received his lawyer's letter sent on February 27, 1995, respondent was representing an individual, James Neal Siuchang,[9] in an appeal of a criminal conviction for conspiracy to commit murder.
3.4 Respondent failed timely to file an affidavit of compliance required by RLD 8.3. Compliance with that rule was required because at the time respondent received notification from his lawyer of his suspension he was in an attorney-client relationship with at least two individuals. Even if respondent was not involved in such a relationship at that time, he was obligated to file an affidavit reflecting that fact. Respondent knew or should have known of the duties imposed upon him due to the suspension of his license to practice law.

COUNTS III AND IV
4.1 The conduct of respondent leading to the suspension of his license to practice *1047 law in 1995 involved a loss to a client [Joaquin Vaca (aka Joaquin Baca-Amescua)] and the Department of Labor & Industries of $1,706.54. The client was paid money by the Client Security Program (hereafter referred to as the "Program" and now known as the Lawyer's Fund for Client Protection). As a condition for reimbursement, the client assigned his claim for restitution from respondent to the Program.
4.2 One of the conditions imposed upon respondent for reinstatement of his license to practice law was that he provide WSBA with a payment plan for the money owed. On February 26, 1996, respondent gave a check to the program in the amount of $706.54 and requested reinstatement when the balance of $1,000 was paid.
4.3 Respondent's license to practice law was reinstated effective March 6, 1996. On February 27, 1996, respondent agreed, in writing, to pay the balance of $1,000 restitution to the Program on or before March 27, 1996. The document reflecting this agreement also stated that failure to comply with its terms "would be evidence of dishonesty, deceit or misrepresentation in connection with his reinstatement and that such conduct may subject him to disciplinary action pursuant to RLD 1.8(f)." At the time this agreement was signed by respondent he was employed in New Mexico, where he had relocated in the fall of 1994.
4.4 Disciplinary counsel spoke with respondent by telephone on April 3, 1996 and advised him that WSBA had not yet received payment of the $1,000 balance due to the Program. Respondent stated, in reply, that he would mail payment to the Program no later than April 8, 1996. Respondent failed to make the payment until May 10, 1996. In the interim, a grievance was initiated against respondent due to the failure to abide by his promise to pay by March 27, 1996, and a response to that grievance was requested within ten days. The response did not arrive at WSBA until August 12, 1996. Respondent knew or should have known of his obligation timely to respond to a grievance as required by RLD 2.8.
4.5 Respondent never advised disciplinary counsel of an inability to pay the $1,000 balance to the Program, nor did respondent request an extension of time within which to make payment.
4.6 There was no evidence that respondent's economic situation deteriorated after he agreed on February 27, 1996 to pay the $1,000 balance to the Program by March 27, 1996. Respondent did have financial problems after he paid the Program.
4.7 Respondent misrepresented his ability to pay the $1,000 balance when he entered into the agreement of February 27, 1996. The ability to pay that money was a material fact put forward by respondent in his efforts to reinstate his license to practice law in the state of Washington. Respondent also misrepresented his ability to pay the balance when he promised to send the money to WSBA by April 8, 1996. This, too, was a material misrepresentation of fact made in an effort to forestall an additional grievance against him.
4.8 Respondent's failure timely to respond to the grievance arising from failure timely to pay the Program was knowing and deliberate.

COUNTS VII, VIII, IX AND X
5.1 Respondent began representation of James Neal Siuchang when he filed a notice of appearance in Division I of the Washington Court of Appeals on October 6, 1993. Previously, Mr. Siuchang was represented on appeal of his conspiracy to commit murder conviction by the Washington Appellate Defender Association (WADA). The director of WADA at that time was Suzanne Elliott, Esq. Ms. Elliott requested production of the verbatim report of proceedings at public expense.
5.2 On June 25, 1993, the court reporter who reported most of the Siuchang trial certified that the transcript would be completed by October 31, 1993. In August 1993 WADA requested from the Court of Appeals an extension of time within which to file the transcripts with the court because of the delay encountered by the *1048 court reporter. On October 7, 1993 respondent requested WADA to send him any transcripts it had. All of the transcripts in the Siuchang matter were filed with the Court of Appeals by the appropriate court reporters on or before February 17, 1994.
5.3 An opening brief in the Court of Appeals was not filed by respondent on behalf of Mr. Siuchang within the time initially set by the court. However, because of the late preparation of the transcript, this initial failure was reasonable. What was not reasonable was respondent's failure to request an extension of time from the court. Instead, the court threatened to dismiss the appeal. Only when that occurred did respondent request an extension of time to June 14, 1994 within which to file an opening brief on behalf of Mr. Siuchang, respondent's client.
5.4 Respondent did not file an opening brief of Mr. Siuchang by June 14, 1994. He instead waited until June 20, 1994 to move for an extension of time. The court moved the filing date to July 14, 1994. Again, that deadline was not met by respondent and again the court threatened to dismiss or impose sanctions if the brief was not filed by August 8, 1994. Only on August 11, 1994 did respondent move for an extension of time. In this request he referred to other professional commitments. Proof of service was not filed with this motion. The Court of Appeals, on August 24, 1994, gave respondent an additional ten days to file an opening brief and set September 16, 1994 for a hearing of the court's motion for dismissal or imposition of sanctions. The court also separately notified respondent that the request for an extension of time would not be considered without filing proof of service by September 16, 1994.
5.5 Neither an opening brief nor proof of service was filed by September 16, 1994. Respondent did not appear in court on September 16, 1994. Yet the Court of Appeals gave respondent until October 7, 1994 to file an opening brief.
5.6 On October 8, 1994 respondent filed in the Washington Court of Appeals a motion for still another extension of time on the ground that he was moving for a new trial in Superior Court. The motion was signed by respondent [on] October 6, 1994. Papers in support of such a motion were filed in King County Superior Court on October 6, 1994.
5.7 A hearing was held in King County Superior Court on October 13, 1994 on the motion by respondent for a new trial in the Siuchang matter. Issues of jurisdiction of the trial court were discussed by respondent, the court and the prosecutor. Respondent was directed to file a brief by October 17, 1994; the prosecutor was to file a brief by October 24, 1994. On December 15, 1994, the Court of Appeals directed respondent to inform it of the status of the Superior Court proceedings. The Superior Court did not rule on the motion until December 23, 1994, when it denied the motion. Respondent did not inform the Court of Appeals of the ruling; the prosecuting attorney did on December 28, 1994. The Court of Appeals then set February 7, 1995 as the date by which respondent had to file an opening brief.
5.8 On October 20, 1994, the Washington Supreme Court filed its decision in State v. Pacheco, later reported at 125 Wash.2d 150, 882 P.2d 183. This decision materially affected the validity of Siuchang's conviction. It held that a conspiracy cannot occur when only one other co-conspirator is involved and that other individual is a police agent. [Mr. Siuchang's conviction was based on a conspiracy involving a single conspirator, a police agent.][10] Respondent knew or should have known of the decision in Pacheco and its import to the Siuchang appeal no later than December 31, 1994.

*1049 5.9 Respondent did not file an opening brief on behalf of Mr. Siuchang by February 7, 1995 as the Court of Appeals had ordered. As earlier recounted, respondent was suspended from the practice of law and he knew or should have known of that fact no later than March 1, 1995. Respondent advised Mr. Siuchang and his family of the likelihood of suspension but not of its actual fact. Mr. Siuchang consulted with another lawyer in California, Arturo Hernandez, about handling the Siuchang appeal. There is no documentation of when that consultation began, its extent, or why a Washington lawyer was not to be involved. Respondent sent to Mr. Hernandez his file materials, including transcripts, in the Siuchang matter in January 1995.
Respondent obtained Mr. Siuchang's consent to some but not all of the delays encountered in prosecuting the appeal and motion for new trial. Mr. Siuchang preferred to discuss these matters in Spanish. Respondent was able to oblige that request. Respondent had no evidence of any conversation or other communication authorizing the delay.
5.11 On March 2, 1995, the Court of Appeals notified respondent that an opening brief had not been filed. By then, respondent knew of his suspension from the practice of law in the state of Washington. Respondent failed to notify the Court of Appeals of that suspension. The Court of Appeals only learned of that suspension otherwise than from respondent and notified respondent it was appointing new counsel for Mr. Siuchang because of the suspension. WADA was again appointed as counsel for Mr. Siuchang on March 16, 1995. Respondent did not respond to any of the letters from the Court of Appeals.
5.12 Suzanne Elliott, director of WADA, wrote to and telephoned respondent in an effort to obtain the transcripts of the Siuchang trial which had been sent on to attorney Hernandez in January 1995. Ms. Elliott received no response to these inquiries. Use of the transcripts of a trial is a vital part of the appeal in any case. Respondent did not inform Ms. Elliott that the transcripts and other file materials were not then in his possession.
Because Ms. Elliott could not obtain a response from respondent regarding the transcripts, she made a motion in the Court of Appeals for an order compelling him to transfer the transcripts to WADA. Instead of responding to the motion, respondent caused Mr. Hernandez to transmit the file materials to Ms. Elliott. Ms. Elliott still did not know of Mr. Hernandez's involvement in the matter and Mr. Hernandez never filed a notice of appearance on behalf of Mr. Siuchang. When the file materials arrived at her office, Ms. Elliott found that they were in total disarray. The Court of Appeals heard the motion of Ms. Elliott on May 2, 1995. Respondent failed to appear. The court imposed terms of $150 "to be paid to the Washington Appellate Defender Association." Respondent did not make arrangements to pay the sanction up to the time WADA was disbanded on July 31, 1995.
Not until October 1997 did respondent inquire about payment of the terms assessed against him by the Court of Appeals. However, he did so only by contacting WSBA, not the court.
5.15 Attorney Sheryl Gordon McCloud was ultimately retained by the Siuchang family in August 1995. In her opening brief filed in behalf of Mr. Siuchang, citation was made to, and reliance placed upon, State v. Pacheco, supra. After receipt of the opening brief, the prosecutor and Ms. McCloud entered into negotiations which led to Mr. Siuchang's pleading guilty to a lesser offense, dismissal of the conspiracy charge, dismissal of the appeal and a sentencing recommendation which was accepted by the trial court. That recommendation allowed release of Mr. Siuchang from prison.
6.1 Respondent was mentally and emotionally competent at all times relevant to the formal Complaint. There was no evidence of severe chronic or situational depression or other disabling conditions.[11]
*1050 The hearing officer reached the following conclusions of law:
7.1 Bar Disciplinary Counsel must prove the charges in a formal complaint by a "clear preponderance" of evidence.
7.2 Count I should be dismissed. Disciplinary counsel's evidence failed to establish the scienter requirement of RPC 3.4(c).
7.3 Count II was proved. Respondent violated RLD 8.3.
7.4 Count III was proved. Respondent violated RLD 8.4(c) when he misrepresented his ability to pay $1,000 to the Client Security Program.
7.5 Count IV was proved. Respondent violated RLD when he failed to respond in a timely manner to a grievance.
7.6 Counts V and VI were dismissed by Bar counsel.
7.7 Count VII was proved. Disciplinary counsel's evidence failed to establish lack of Mr. Siuchang's consent to respondent's repeated delays in processing Mr. Siuchang's appeal. The Pacheco decision should have stimulated perfection of Mr. Siuchang's appeal. Respondent's failure to obtain extensions of time before various court deadlines seriously threatened the rights of Mr. Siuchang even if Mr. Siuchang, as a client, consented to delay.
7.8 Count VIII was proved. RPC 1.15(d) and RLD 8.1(a)(4) were both violated by respondent's failure to inform successor counsel of the location of client files and papers and to procure the files and papers in a more timely fashion.
7.9 Count IX is proved. Respondent failed to notify the Court of Appeals of his suspension as required by RLD 8.1(a)(2).
7.10 Count X is not proved. Disciplinary counsel's evidence failed to establish the scienter requirement of RPC 3.4(c). That WADA ceased to exist within three months of the imposition of the sanctions clouds whether a continuing obligation existed and therefore whether respondent knowingly disregarded a court rule. Whether and to what extent respondent ought properly to have approached the court for clarification is a different issue but does not create the scienter requirement of the rule violation charged by disciplinary counsel.
7.11 Whether and to what extent respondent's conduct and omissions implicate RLD 1.1(p) [unfitness to practice law] should await consideration of argument by counsel.[12]
The hearing officer recommended a further hearing within 40 days to determine the appropriate discipline.[13] That hearing was held on February 24, 1999.[14] Hearing Officer Fletcher signed findings of fact and conclusions of law relating to the sanctions on April 9, 1999,[15] which stated:
1.1 Honorable Robert Lasnik, the trial judge in one of the Suichang cases, testified that Respondent was "exactly the right lawyer" for the defense in that case. Respondent's skills as a trial lawyer were noted not only by that judge ... [but] also by a professional colleague, John Muenster, Esq. Mr. Muenster worked with and observed Respondent in criminal defense matters for approximately eight years. Respondent obtained favorable results for his clients because of his courtroom acumen.
1.2 Respondent has a genuine belief that disadvantaged people or people without economic means must be provided with effective defense counsel in criminal cases and other matters where liberty rights are at issue. He has devoted his career to that pursuit.
1.3 In litigation Respondent excels in the courtroom. His written work does not equal his work examining witnesses, arguing legal points to judges and factual matters to juries. In his professional career, Respondent has likewise fared less well with requirements place[d] on lawyers by the Rules of Professional Conduct. He was suspended from the practice of law by *1051 stipulation in 1995 on multiple charges and he was admonished in 1990.
1.4 Respondent believed that in representing individuals in the criminal justice system where informers are involved that delay is the "best friend" of the defense. The informer may disappear or change stories. That belief seems to dictate Respondent's attitude toward WSBA discipline and even appellate work on behalf of clients in the criminal justice system.
1.5 With respect to Count II, Respondent made his affidavit of compliance 18 days after RLD 8.3 required him to do so.... Respondent knew that his suspension would occur based on the stipulation for discipline filed earlier that year. Respondent had actual knowledge of his suspension as of March 1, 1995. Respondent was replaced as counsel of record in a criminal appeal by action of the Court of Appeals on its own motion. Whether Respondent's 18-day delay in complying with the rule caused harm to the public or to the legal system is, at best, speculative. Even potential harm is incapable of quantification given the relatively short time period involved and the fact that Respondent apparently was involved in only two client matters and one of those was superficial at best.
1.6 In Count III, Respondent knowingly misrepresented his financial condition when he promised to make restitution as a condition of reinstatement following his suspension. This adversely reflected on Respondent's fitness to practice law in this state because he deceived the Bar Association in order more quickly to resume the practice of law. This was not simply cutting a corner.
1.7 Related to Respondent's misrepresentation of his ability to make restitution was his failure, in Count IV, to cooperate by providing a timely response to the grievance against him made by disciplinary counsel. The Hearing Officer, in the earlier decision, found that this conduct was "knowing and deliberate." ... Here, again, the actual or potential harm to a client, the public or the legal system is speculative. The harm seems most inflicted on the Respondent himself.
1.8 In Count VII, Respondent's failure to prosecute his client's appeal is almost mystifying. Here, a client could have been harmed through failure to perfect the appeal of a criminal conviction. While the Hearing officer cannot say as a probability that the client remained in prison longer due to Respondent's omissions and conduct, the lack of diligence cannot be excused.
1.9 Count VIII involves Respondent's failure to give his client files to a successor lawyer after his suspension. This interfered with perfection of an appeal of a criminal conviction. The files were transmitted by Respondent to another lawyer in California. However, Respondent did not notify successor counsel of record in the Washington courts of this fact. The California lawyer apparently never became counsel of record nor did he participate in an attorney-client relationship with the imprisoned client. Respondent's duty to his client required that he inform his successor of the location of the files or, alternatively, see to it that the files were timely transmitted to the successor counsel of record.
1.10 The failure of Respondent in Count IX to notify the Court of Appeals of his 1995 suspension did not cause any harm to the client. But that is only due to the action of the Court of Appeals replacing Respondent as counsel of record when it learned of the suspension. Timely compliance with RLD 8.1(a)(4) places the burden of notice on the lawyer. The courts are not under a duty to learn who is acting under a suspended license.
1.11 Count X involves Respondent's failure to pay terms assessed against him by the Court of Appeals. The terms were to be paid to the Washington Appellate Defender Association ("WADA"). However, less than two months after the terms were awarded by the court WADA ceased to exist. However, for two years Respondent failed to make inquiry about payment of the terms.

*1052 [CONCLUSIONS OF LAW]
2.1 In the event of multiple ethical violations the sanction to be imposed must be consistent with the sanction for the most serious proven misconduct. Discipline of Petersen, 120 Wash.2d 833, 854, 846 P.2d 1330 (1993).
2.2 In determining the appropriate sanction the disciplinary authority must consider The ABA Standards for Imposing Lawyer Sanctions. In Re: Johnson, 114 Wash.2d 737, 745, 790 P.2d 1227 (1990). This further requires consideration of aggravating or mitigating factors identified by the ABA Standards. Id.

2.3 The ABA Standards look at the particular ethical duty violated by the lawyer, the mental state of the lawyer, the extent of any actual or potential injury and any aggravating or mitigating circumstances.
2.4 ABA Standard 7 is applicable with respect to Count II. This standard dictates suspension when the lawyer "knowingly" engages in conduct that violates a duty owed to the profession which causes injury or potential injury either to a client, the public or the legal system. However, in this situation, the delay caused by Respondent's failure to file his affidavit of compliance caused little or no actual or potential injury. Had the conduct of Respondent been isolated then an admonition would be appropriate. Here, a reprimand is warranted because the conduct was knowing, although the harm was slight.
2.5 ABA Standard 5.1 should apply to Count III. The misrepresentation made regarding Respondent's financial situation involved knowing conduct which involved misrepresentation. This misrepresentation adversely reflected on Respondent's fitness to practice law. A reprimand is therefore appropriate pursuant to Standard 5.13.
2.6 ABA Standard 7 should apply to Count IV. While the conduct was knowing, the potential harm was slight or speculative. A reprimand, pursuant to Standard 7.3, would seem, therefore, to be most appropriate.
2.7 The lack of diligence exhibited in Count VII caused potential injury to Respondent's client. This was due to a pattern of neglect exhibited by Respondent's failure to prosecute the client's appeal. ABA Standard 4.42 dictates suspension. The failure of Respondent timely to turn over files of his client to successor counsel of record in the Court of Appeals was part of a pattern of neglect demonstrating a lack of diligence. This had the potential to cause grave injury to his client.
2.8 The failure timely to notify the Court of Appeals in Count IX demonstrated a lack of personal integrity adversely reflecting on Respondent's fitness to practice law. An admonition pursuant to Standard 5.14 is therefore appropriate.
2.9 The failure to timely pay terms as ordered by the Court of Appeals merits a letter of censure. This sanction is unique to Washington. It is more serious than an admonition but less serious than a reprimand. Because the recipient of the terms ceased to exist through no fault of Respondent the factors set forth in ABA Standard 7 do not well apply to the facts found by the Hearing Officer.
2.10 In mitigation of the sanctions set forth herein is the character and reputation of Respondent over a long period of time in representing disadvantaged people in matters concerning their personal liberties. Respondent has been a zealous advocate in the courtroom. His work in this regard is exemplary. On the other hand, the aggravating factors set out in ABA's Standards 9.22 outweigh these mitigating factors. The aggravation occurs because of the prior disciplinary offenses, a seeming pattern of misconduct regarding non-observance of the Rules of Professional Conduct, multiple offenses alleged and proved in these proceedings and in the 1995 stipulation, as well as Respondent's substantial experience in the practice of law.
2.11 If the offenses proved in this proceeding were the only marks against Respondent, this Hearing Officer would recommend suspension for a period of one year. However, that is not the case. Respondent *1053 has been down this road before. This Hearing Officer believes that a suspension for no less than 18 months is required together with assessment of costs and expenses associated with these proceedings pursuant to RLD 5.7(h).
2.12 Further complicating matters is that Respondent no longer practices or resides in the State of Washington. How and to what extent Respondent practices law at this time is unknown. This Hearing Officer recommends that after the period of suspension that Respondent practice law only on the condition that he do so under the supervision of another attorney licensed in the State of Washington. Respondent's courtroom abilities are compromised by his history of neglect of some client matters outside of the courtroom and neglect of his professional responsibilities owed to the court system and to the Washington State Bar Association and, in some instances, to other counsel attempting to assist former clients.[16]
2.13 The supervision to be required of Respondent after his readmission to practice law would require review of deadlines in order for respondent to provide timely responses to inquiries from any source regarding Respondent's practice of law. While this may force Respondent into the position of practicing law with a partner or in a firm it is in Respondent's best interest to do so as well as in the best interests of his clients and the public.[17]
Under RLD 6.7, the Disciplinary Board of the Washington State Bar Association reviewed the decision of the hearing officer and on November 29, 1999 approved and adopted without modification the Hearing Officer's Findings of Fact, Conclusions of Law and Recommendation.[18] The order states:
THIS MATTER came before the Disciplinary Board at its November 19, 1999 meeting. Upon review of the Hearing Officer's Findings of Fact, Conclusions of Law and Recommendation and supporting documentation,
IT IS ORDERED that the Hearing Officer's Findings of Fact, Conclusions of Law and Recommendation are approved and adopted.[19]
The Disciplinary Board's order was signed by an 11 person majority on November 29, 1999: David Cullen, Dawn Sturwold, Douglas Smith, Stephen C. Smith, James Drewelow, Jennifer Wathen, Kimberly Goetz, Lori Lamb, Frederick Dullanty, and Thomas Hayton.[20] A single dissent was signed on February 22, 2000 by Richard B. Kilpatrick, concluding:
The errors here were serious and I agreed with the discipline imposed. I dissent, however, over the treatment of the practice monitor.
In this case, Mr. Juarez has claimed he is removed from the day to day minutia of the cases and the types of matters he neglected. His practice is now little in Washington but is a multi-state criminal *1054 practice in the Federal Courts. His courtroom ability was not questioned and in fact largely praised by Judges from this state.
Certainly Washington has the right to impose a monitor for any lawyer, multi-state practice or otherwise, but reasonableness and equity do not seem served by tying Mr. Juarez to a Washington practice monitor and specific meetings and reviews as is done here. I would have rather imposed some requirement to associate local counsel responsible for rules compliance and then ha[ve] a review after a specified period. Nor if a monitor is to be required, must it be a Washington lawyer. A monitor willing to serve from another state or more than one from several states could more than adequately do the job, can just as easily report to the Office of Disciplinary Counsel and themselves might be more knowledgeable of the local rules and customs, which do vary even among Federal District Courts. In short, the monitor requirement as crafted seemed unnecessarily burdensome for no additional gain. Thus I dissent.[21]
RLD 6.7(b) provides the standard of review by the Disciplinary Board of decisions of hearing officers:
(b) Standard of Review. In reviewing the findings of fact of a hearing officer or hearing panel the Board shall apply a "substantial evidence" standard of review. In reviewing the conclusions of law and recommendation of a hearing officer or hearing panel, the Board will apply a "de novo" standard of review.
On December 27, 1999, Respondent filed a notice of appeal to this court.[22] The Disciplinary Board filed an order assessing costs and expenses against Respondent totaling $5,793.41 on February 3, 2000.[23] We granted review.

DISCUSSION
Respondent Juarez contends the sanctions recommended by the hearing officer and approved and adopted by the Disciplinary Boardrequiring his suspension from the practice of law for 18 months and after the period of suspension that he practice law only under the supervision of another attorney licensed to practice in the State of Washington are too harsh for his acts of misconduct.[24] He argues the mitigating factors in his case warrant a sanction less than an 18 month suspension.[25] He claims the appropriate presumptive sanction for his misconduct is a reprimand.[26] Although Respondent does not dispute the probation recommendation, he does challenge the requirement that his law practice be supervised by a lawyer licensed to practice in Washington.[27]
The Bar Association contends the sanctions adopted by the Disciplinary Board against Respondent are proper because he "engaged in a pattern of neglect by repeatedly failing to meet deadlines and act diligently in handling a client's appeal of a criminal conviction."[28] The Association argues that, considering Respondent's admonition in 1990, his prior one-year suspension by stipulation from the practice of law in 1995, and his commission of numerous violations similar in nature to those in this proceeding involving neglect and RPC 1.3, Respondent must be supervised by a lawyer licensed to practice law in Washington to ensure that he not continue to violate his ethical obligations inasmuch as his practice in the federal courts *1055 is dependent upon his Washington State Bar license.[29]
The following Rules of Professional Conduct (RPC) are relevant to the charges against Respondent, to the findings of fact and conclusions of law of the hearing officer, and to the order of the Disciplinary Board adopting the findings of fact and conclusions of law of the hearing officer:
RULE 1.3 DILIGENCE
A lawyer shall act with reasonable diligence and promptness in representing a client.
RULE 1.15 DECLINING OR TERMINATING REPRESENTATION
....
(d) A lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.
RULE 3.4 FAIRNESS TO OPPOSING PARTY AND COUNSEL
A lawyer shall not:
....
(c) Knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]
RULE 8.4 MISCONDUCT
It is professional misconduct for a lawyer to:
(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]
The following Rules for Lawyer Discipline (RLD) are relevant to the charges against Respondent, to the findings of fact and conclusions of law of the hearing officer, and to the order of the Disciplinary Board adopting the findings of fact and conclusions of law of the hearing officer:
RULE 1.1 GROUNDS FOR DISCIPLINE
A lawyer may be subjected to the disciplinary sanctions or actions set forth in these rules for any of the following:
....
(i) Violation of the Rules of Professional Conduct of the profession adopted by the Supreme Court of the State of Washington;
(j) Violation of duties imposed by these rules, including but not limited to violation of rule 2.8, failing to respond to inquiries or requests regarding matters under investigation; rule 4.5, failing to file an answer to a formal complaint; rule 4.6(c), failing to file an answer to an amendment to a formal complaint; rule 4.7(e), failing to cooperate with discovery; rule 4.10(g), failing to attend a hearing or failing to bring materials requested by disciplinary counsel; rule 5.5(b), failing to appear to receive a reprimand; rule 8.1, failing to notify clients and others of inability to act; rule 8.2, failing to discontinue practice; rule 8.3, failing to file an affidavit of compliance; rule 11.1(t), wrongful disclosure; rule 13.2, failing to cooperate with an examination of books and records; rule 13.4(d), failing to notify Association of trust account overdraft; rule 13.5, failing to file a declaration or questionnaire certifying compliance with RPC 1.14;
....
(p) Conduct demonstrating unfitness to practice law.
RULE 2.8 RESPONDENT LAWYER
(a) Duty to Furnish Prompt Response. It is the duty of every lawyer promptly to respond to any inquiry or request made pursuant to these rules for information relevant to grievances or matters under investigation concerning conduct of a lawyer. Upon such inquiry or request, every lawyer:
(1) Shall furnish in writing, or orally if requested, a full and complete response to inquiries and questions[.]
....
(b) Failure to Cooperate. When a lawyer has failed to comply with any request made pursuant to section (a) for *1056 more than 30 days, disciplinary counsel may notify the lawyer that failure to so comply within 10 days may necessitate the taking of the deposition of the lawyer pursuant to subpoena.
....
(3) Failure of a lawyer to cooperate fully and promptly with an investigation as required by section (a) of this rule shall also constitute grounds for discipline.
....
RULE 8.1 NOTICE TO CLIENTS AND OTHERS
(a) Upon Disbarment or Suspension of Certain Kinds. A lawyer who has been disbarred, suspended for more than 60 days, or suspended pursuant to the provisions of Title 3, APR 11, or for nonpayment of dues, shall within 10 days of the effective date of his or her disbarment or suspension:
....
(2) Advise all clients involved in litigation or administrative proceedings to seek the prompt substitution of another lawyer. In the event the client does not substitute counsel within 10 days of being notified of the lawyer's inability to act, it shall be the responsibility of the lawyer to advise the court or agency of the lawyer's inability to act; and
....
(4) Provide clients or their substituted counsel upon request with their files and other documents of the client in the possession of the lawyer, regardless of any possible claim of lien under RCW 60 .40.
....
RULE 8.3 AFFIDAVIT OF COMPLIANCE
Within 25 days after the effective date of his or her disbarment, suspension, or transfer to disability inactive status, the lawyer shall file with the Association an affidavit stating that he or she has fully complied with the provisions of these rules. The affidavit shall also set forth the residence or other address of the lawyer to whom communications may thereafter be directed. The lawyer shall attach to the affidavit copies of the form letters of notification sent to the lawyer's clients, and to opposing counsel or opposing parties, and copies of letters to any court, together with a list of names and addresses of all clients and adverse parties or their lawyers to whom notices were sent.
In this review this court is called upon to determine the appropriate sanction for Respondent. The principal issue in this case is whether the Disciplinary Board's recommendation is appropriate, or whether this court should impose an alternative sanction.[30] Respondent disputes the sanctions recommended by the hearing officer and approved and adopted by the Disciplinary Board. He contends his acts of misconduct were not intentional or knowing, and challenges six counts which the hearing officer determined were proven by clear preponderance of the evidence: Counts II, III, IV, VII, VIII and IX.[31]
Respondent admits he did not timely respond to deadlines, but claims he should be afforded some consideration because he eventually did comply with most of the underlying requests. He asserts that because no one other than he was actually injured,[32] his conduct does not justify an 18 month suspension from the practice of law with the condition that he resume the practice of law following the suspension only under supervision of a lawyer licensed to practice in the State of Washington. Respondent has cited no authority in support of this assertion.
This court will not disturb conclusions of law by a hearing officer if they are *1057 supported by the findings of fact. Where the hearing officer's findings of fact are determined by a clear preponderance of the evidence,[33] they will be upheld even if the evidence is disputed. The hearing officer's findings are entitled to considerable weight especially when the credibility of witnesses is at issue.[34] This court will not substitute its evaluation of the credibility of witnesses for that of the hearing officer.[35] "It is incumbent on counsel for the appellant to present argument to the court why specific findings of fact `are not supported by the evidence and to cite to the record to support that argument.'"[36] This court will adopt the Disciplinary Board's recommendation unless the court can articulate a specific reason to depart from it.[37]
The record in this case indicates a clear preponderance of the evidence to support all the findings of fact and conclusions of law of the hearing officer.

SANCTIONS
While this court gives great weight to the recommendation of the Disciplinary Board,[38] the ultimate responsibility for determining sanctions in attorney discipline cases rests with the court.[39]
The ABA Standards for Imposing Lawyer Discipline serve as a guide for determining appropriate disciplinary sanctions.[40] Under the ABA Standards, the court engages in a two-step process. First, the presumptive sanction is determined by considering (1) the ethical duty violated, (2) the lawyer's mental state, and (3) the extent of actual or potential harm caused by the misconduct.[41] Second, the court considers any aggravating or mitigating factors that may alter the presumptive sanction or affect the duration of a suspension.[42]
Although RLD 5.1(b) recommends that the sanction of suspension from the practice of law should be for a fixed period not to exceed two years,[43] this court has concluded the duration of suspensions should be for a period not less than six months and not greater than three years based upon the ABA Standards.[44] A minimum suspension of six months "seems more appropriate in a case where there are either no aggravating factors and at least some mitigating factors, or where the mitigating factors clearly outweigh any aggravating factors."[45]

ETHICAL VIOLATIONS
To determine the presumptive sanction for Respondent Juarez' misconduct, the court first considers the question of his ethical violations.
Lawyers owe an ethical duty to their clients, to the legal system, to the legal profession, and to the general public.[46] They *1058 are expected to display the highest standards of honesty and integrity and to avoid dishonest, fraudulent or deceitful conduct.[47]
The hearing officer found that Respondent violated the following ethical duties:
Respondent's Prior Suspension Matter:
1. Count II: RLD 1.1(j), violation of RLD 8.3 (lawyer must file an affidavit of compliance within 25 days after suspension).
The Joaquin Vaca (aka Joaquin Baca-Amescua) Matter:
2. Count III: RLD 1.1(i), violation of RPC 8.4(c) (lawyer prohibited from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).
3. Count IV: RLD 1.1(j), violation of RLD 2.8 (lawyer required to respond in a timely manner to Disciplinary Counsel's request for response to a grievance).
The James Neal Suichang Matter:
4. Count VII: RLD 1.1(j), violation of RPC 1.3 (lawyer must be reasonably diligent and prompt in representing a client).
5. Count VIII: RLD 1.1(i) and (j), violations of RLD 8.1(a)(4) (lawyer must provide clients or their substituted counsel, upon request, with their files and other documents in lawyer's possession), RPC 1.15(d) (lawyer must protect a client's interests such as surrendering papers and property to which the client is entitled).
6. Count IX: RLD 1.1(j), violation of RLD 8.1(a)(2) (lawyer suspended for more than 60 days must notify clients and the court of the suspension).
By violating Rules of Professional Conduct (RPC) 1.3, 1.15(d), 3.4(c) and 8.4(c), and Rules for Lawyer Discipline (RLD) 2.8, 8.1(a)(2) and (4), and 8.3, Respondent neglected his ethical obligations to his clients, to the legal profession and to the general public.
The hearing officer also found the following sections of the ABA Criteria for Sanctions applied: 4.42 (lack of diligence); 5.13 (failure to maintain personal integrity); 5.14 (failure to maintain personal integrity); and 7.3 (violation of duties owed to the profession).[48]
ABA Standards for Imposing Lawyer Sanctions std.7.3 provides:
Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.
Respondent admits he did not timely file his affidavit of compliance within 25 days of February 15, 1995, the date of his prior suspension from the practice of law.[49] The Bar Association points to Respondent's concession that a reprimand is the presumptive sanction for the violation found in Count II.[50]
Respondent's stipulation for discipline in his prior case was approved by this court, effective immediately, by order dated February 15, 1995. His lawyer mailed a letter to him on February 27, 1995 advising him to discontinue practicing law in Washington and informing him of the requirement for filing an affidavit of compliance within 25 days after the date of his suspension under Rule for Lawyer Discipline 8.3. The 25 days expired March 10, 1995. Respondent did not sign the affidavit of compliance until April 13, 1995. He claims he did not learn of his suspension until March 1, 1995. Even assuming the 25 days would not begin running until that date, Respondent still did not meet a 25-day compliance date which would have matured on March 26, 1995.
ABA Standard 5.13 provides:
Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.
*1059 Respondent admits he did not timely pay $1,000.00 to the Lawyer's Fund for Client Protection by March 27, 1996 as he promised on February 27, 1996 in signing an agreement to make restitution as a condition of reinstatement following his earlier suspension.[51] He argues that his actions do not justify imposition of a reprimand because they were based upon his good faith belief, at the time he signed the agreement, that he could meet the March 27, 1996 deadline.[52]
The Bar Association argues that among the six counts the hearing officer determined were proven in this case, Count III is the most egregious.[53] The hearing officer determined Respondent "deceived the Bar Association in order more quickly to resume the practice of law."[54] The hearing officer also made findings of fact that Respondent never told Disciplinary Counsel he could not afford to pay the $1,000.00 balance, that he did not request an extension of time from March 27, 1996, and that he misrepresented his ability to make the payment by April 8, 1996.[55]
ABA Standard 7.3 provides:
Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.
The presumptive sanction of reprimand is warranted under those facts.
Respondent admits he did not timely respond to the Bar Association's request for his response to the grievance about his delay in paying the $1,000.00 owed to the Lawyer's Fund for Client Protection, but states he "did respond."[56] He argues he should be given consideration because the Bar Association eventually did receive his response.
There was injury to the legal profession when Respondent did not promptly respond to the Bar Association's request. A reprimand is warranted.
ABA Standard 4.42 provides:
Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.
ABA Standard 5.14 provides:
Admonition is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.
Respondent contends his legal actions in the James Neal Suichang matter do not justify imposition of an 18 month suspension because those actions were negligent and not intentional or knowing. The Bar Association responds that, although the hearing officer did not make an explicit finding concerning Respondent's mental state, the hearing officer implied that Respondent acted with knowledge.[57] The Bar Association maintains that, even absent a finding of knowledge, Respondent's suspension is appropriate under ABA Standard 4.42(b) because the hearing officer found Respondent's conduct constituted a pattern of neglect and caused serious potential injury to his client, Mr. Suichang.[58]
*1060 In response to Count VII (failure to diligently pursue Mr. Suichang's appeal), Respondent admits he should have been more punctual in submitting Mr. Suichang's initial appellate brief or in filing motions for an extension of time to file the brief before the due dates had expired, and there was some potential serious jeopardy to Mr. Suichang.[59] In response to Count VIII (failure to promptly turn over Mr. Suichang's file to WADA), Respondent admits "[t]here was a technical violation because [Respondent] found out about his suspension after the WSBA notified the Court of Appeals about the one-year suspension."[60]
The hearing officer found that Respondent's actions manifested a lack of diligence with the potential to cause "grave" injury to Mr. Suichang because of a "pattern of neglect" exhibited by Respondent's failure to prosecute his client's appeal.[61]
There is substantial evidence in the record to justify the hearing officer's recommendation of suspension for Respondent's lack of diligence in managing the Suichang matter. The hearing officer and the Disciplinary Board properly concluded that Respondent acted improperly in his prior suspension matter, the Joaquin Vaca (aka Joaquin Baca-Amescua) matter, and the James Neal Suichang matter.
Suspension for 18 months is not unreasonable when mitigating and aggravating factors have been weighed.

MENTAL STATE
Under the ABA Standards this court next considers Respondent's mental state. In determining whether a lawyer has committed misconduct, the lawyer's mental state may be evaluated on the basis of intent, knowledge or negligence.[62] Intent involves acting with the conscious objective to accomplish a particular result.[63] There is knowledge when the lawyer has "`the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.'"[64] Suspension is generally appropriate when a lawyer acts knowingly.[65] A lawyer acts negligently when the lawyer "`fails "to heed a substantial risk that circumstances exist or that a result will follow" and that failure "is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."'"[66]
Respondent Juarez acted knowingly in not timely filing his affidavit of compliance, in not paying $1,000.00 to the Lawyer's Fund for Client Protection on time, and in not timely responding to Disciplinary Counsel's request for response to a grievance concerning payment of the $1,000.00 balance to the Fund. By not diligently pursuing Mr. Suichang's appeal, Respondent created the potential of causing his client grave injury. He exhibited a pattern of neglect in not prosecuting his client's appeal.[67]
From the record in this case we conclude that Respondent knowingly violated his ethical duties and that suspension is the appropriate sanction.

INJURY
The final step in determining the presumptive sanction is deciding the extent of actual or potential harm caused by the misconduct. When determining this the Board considers the harm to the client, to the public, and to the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct.[68] This *1061 court gives "`"particularly great weight" to the question of the extent of injury involved due to the attorney's misconduct.'"[69]
The hearing officer determined the extent of the actual or potential injury caused by Respondent Juarez' violations was "grave" incident to his handling of the James Neal Suichang matter. However, he found little or no potential injury in Respondent's prior suspension matter, the Joaquin Vaca (aka Joaquin Baca-Amescua) matter, and several additional violations in the Suichang matter.
The presumptive sanctions found applicable by the hearing officer were suspension, admonition, and a letter of censure as to the Suichang matter;[70] a reprimand as to Respondent's prior suspension matter;[71] and two reprimands as to the Joaquin Vaca (aka Joaquin Baca-Amescua) matter.[72] While the ABA Standards do not recommend an explicit sanction "for multiple charges of misconduct (other than considering it an aggravating factor), they state that the `ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct.'"[73]
Suspension, the most serious presumptive sanction found applicable by the hearing officer, is supported by the record in this case. We conclude that suspension for 18 months is an appropriate sanction for Respondent Juarez' conduct.

AGGRAVATING AND MITIGATING FACTORS
After determining the presumptive sanction of suspension, this court then considers whether aggravating or mitigating circumstances support a deviation from the presumptive sanction.[74]
The hearing officer found the following aggravating factors: (1) prior disciplinary offenses; (2) a pattern of misconduct; (3) multiple offenses; and (4) substantial experience in the practice of law.[75] The hearing officer found only one mitigating factor: character or reputation.[76] Neither the hearing officer nor the Disciplinary Board concluded that aggravating or mitigating factors in this case supported a deviation from the presumptive sanction. The sanctions recommended by the hearing officer were adopted by the Board in their entirety without modification.
Respondent challenges the recommendations of the hearing officer. He admits three aggravating factors: "(1) [t]he prior disciplinary offenses resulting in a 1 year suspension; (2) [m]ultiple offenses, and (3) [s]ubstantial experience in the practice of law."[77] Respondent disputes the hearing officer's determination that he engaged in a "pattern of misconduct."[78]
The hearing officer and the Disciplinary Board were correct in finding a pattern of misconduct. Respondent committed multiple RPC and RLD violations over a substantial period of time in two separate client matters and one personal matter.[79]
*1062 Respondent also objects to "any consideration of a 9 year old admonition as a `prior disciplinary offense.'"[80] He claims that "at some point, an admonition becomes so old that it is irrelevant to the current proceeding."[81] Contrary to Respondent's assertion that his 1990 admonition should be disregarded because it is too old, RLD 5.5A(c) states that "[a]n admonition shall be admissible in evidence in subsequent discipline or disability proceedings involving the lawyer."[82]
Although the weight of consideration given to Respondent's 1990 admonition by the hearing officer is unclear, it was properly considered, along with Respondent's one-year suspension in 1995, as a prior disciplinary offense.
Respondent contends that an 18 month suspension is "overly harsh" and argues that mitigating factors warrant a reduction in the presumptive sanction. The hearing officer determined that "character or reputation" was the only applicable mitigating factor, but Respondent argues that three other mitigating factors should have been considered: (1) Respondent's financial problems, (2) delay in the proceedings, and (3) interim rehabilitation.[83]
Respondent claims his financial difficulties during the time of his prior reinstatement to the practice of law should have been considered a mitigating factor. But, personal financial problems, however severe, are not a mitigating factor even in a disbarment case nor in considering the length of suspension.[84]
The hearing officer properly disregarded Respondent's financial status as a mitigating factor.
Respondent argues that a delay of approximately two years in this proceeding is a mitigating factor and should have been considered by the hearing officer.[85] In his motion to amend the hearing officer's sanctioning decision dated April 22, 1999, Respondent claimed delay in the proceedings as a mitigating factor.[86] The hearing officer, in denying the motion, rejected this argument and concluded Respondent was not prejudiced by the Bar Association's delay in prosecuting the matter and that delay was not a mitigating factor.[87] The hearing officer's order indicated Respondent was himself partly responsible for the delay.[88]
The hearing officer was correct in determining that delay was not a mitigating factor in this case.[89]
Respondent argues that he demonstrated his interim rehabilitation during the delay in these proceedings.[90] He also asserts that the fact no "additional proven grievances" were filed against him during the delay should be considered a mitigating factor.[91] *1063 The Bar Association counterargues that Respondent's claims of rehabilitation, by associating himself with local counsel in the states in which he practices criminal law in the federal courts, are "wholly uncorroborated" and are "nothing more than what a normally prudent lawyer facing discipline would do."[92]
This court has rejected the cessation of misconduct as a mitigating factor.[93] "`Ending misconduct does not erase ... misconduct which has already occurred.'"[94]
Respondent cites In re Tasker[95] in support of his contention that "[r]ehabilitation means that a strong sanction to protect the public is less necessary than when the lawyer has not shown rehabilitation."[96] While Tasker does acknowledge that proposition, the case is distinguishable on its facts. In that case the attorney challenging his disbarment on appeal not only "demonstrated his willingness and ability to clean up his act, thus showing disbarment is not necessary to protect the public [, but] demonstrate[d] the delay in prosecution was caused through no fault of his own, ... and was the result of administrative understaffing and slack prosecution on the part of the association."[97] Respondent Juarez does not make such a showing. Interim rehabilitation is not a mitigating factor warranting reduction of the presumptive sanction in his case.
The hearing officer and Disciplinary Board properly concluded the aggravating factors outweighed the mitigating factors and the presumptive sanction of suspension should be applied.

THE NOBLE FACTORS
This court adopts the recommendation of the Disciplinary Board unless the court can articulate a specific reason to depart from it[98] and one or more of the following "Noble factors" clearly persuades the court the sanction recommended is not appropriate:
1. The purposes of attorney discipline (sanction must protect the public and deter other attorneys from similar misconduct);
2. The proportionality of the sanction to the misconduct (sanction must not depart significantly from sanctions imposed in similar cases);
3. The effect of the sanction on the attorney (sanction must not be clearly excessive);
4. The record developed by the hearing panel (sanction must be fairly supported by the record and must not be based upon considerations not supported by the record); and
5. The extent of agreement among the members of the Board (sanction supported by unanimous recommendation will not be rejected in the absence of clear reasons.)
Sanctions for lawyer misconduct are imposed to protect the public and the administration of justice; to preserve the integrity of the legal profession and maintain public confidence; to deter the offending lawyer and all members of the profession from unethical conduct; and to rehabilitate the offending lawyer where possible.[99]
From the evidence in this case we conclude that suspension for 18 months with probation conditioned upon Respondent's return to law practice only under supervision of another lawyer licensed to practice in the State of Washington is appropriate to preserve the integrity of the legal profession and to maintain public confidence. The record *1064 supports the finding of the hearing officer and Disciplinary Board that Respondent did not maintain diligence in one personal matter and in managing two client matters which caused actual or serious potential injury to his clients. The sanction is also necessary to protect the public and rehabilitate Respondent because he has not demonstrated that he will not continue to commit similar violations in disregard of his ethical obligations under the Rules of Professional Conduct and Rules for Lawyer Discipline.
The facts in this case bring into focus the second "Noble factor"the proportionality of the sanction to the misconduct compared to other disciplinary decisions involving similar misconduct. This court has stressed its "commitments to consistency in attorney discipline cases."[100]
Respondent contends, without citing authority, that an 18 month suspension is disproportionate to the misconduct in his case.[101] The Bar Association counters that an 18 month suspension is not disproportionate in comparison with sanctions imposed by this court in factually similar cases,[102] citing In re Hankin[103] and In re Talbot.[104]
In Hankin, the attorney practiced law while suspended for failure to comply with Continuing Legal Education requirements. While practicing law with knowledge of his suspended status, he neglected to file a petition for dissolution and did not respond to Disciplinary Counsel's request for a response concerning the incident. Upon remand to the Disciplinary Board, there was a stipulation that the attorney was an alcoholic and that his judgment was impaired because of alcohol abuse during the period of his violations of the RPCs and RLDs. This court approved suspension for one year and probation with supervision for two to four years. The misconduct in Hankin, while serious in nature, did not involve multiple client matters, nor did the attorney in that case have a prior disciplinary record. The misconduct of Respondent Juarez involved several clients, a previous admonition, and a previous one-year suspension for neglectful conduct.
The majority of the Disciplinary Board in Hankin found nine mitigating factors and two aggravating factors,[105] while the Board in Respondent Juarez' case agreed with the hearing officer's finding that there was only one mitigating factor but that there were four aggravating factors. Considering the greater potential for injury to the public and to the legal profession created by Respondent Juarez in this case, the misconduct of the attorney in Hankin represents the low end of the scale of culpable neglectful conduct.
In Talbot, a pre-ABA Standards case, the court approved the recommendation of the Disciplinary Board for disbarment of the attorney for four acts of misconduct: (1) disregarding an automatic stay of a client's bankruptcy petition and withdrawing funds from the court registry to pay his attorney's fees; (2) neglecting to respond to a pending motion for summary judgment and not telling his client the motion was granted against her; (3) neglecting to process an estate in which he served as executor and not appearing for show cause hearings during a lawsuit filed by his client's heirs; and (4) failing to cooperate in and ignoring the Bar Association's investigation of the matter. In addition, the attorney had several prior disciplinary offenses involving similar misconduct: a 1969 censure for two counts of neglect of a legal matter; a reprimand for not cooperating with the Bar Association's investigation; a 1970 suspension and a 1971 reprimand for neglect of legal matters; and a voluntary transfer to inactive status in 1972 to avoid pending disciplinary charges.[106]
*1065 The misconduct in Talbot was of a more egregious nature than the misconduct of Respondent Juarez. Talbot represents the high end of the scale of culpable neglectful conduct.[107] In this case, Respondent Juarez' conduct falls somewhere between the misconduct in Hankin and the misconduct in Talbot.
"Prolonged delay and procrastination reflect poorly on the profession and may harm the interests of clients and others."[108] This court has consistently imposed suspension when attorneys neglect matters entrusted to them.[109] The duration of the suspension is contingent upon the facts and circumstances of each case.[110]
Respondent Juarez previously in 1990 received an admonition and in 1995 a one-year suspension for neglecting client matters.
The recommended suspension in this case is proportionate to sanctions imposed in similar cases involving lack of diligence. The recommended probation in this case following the 18-month suspension which allows Respondent to practice law only under the supervision of another attorney licensed to practice in the State of Washington is proportionate to sanctions imposed in substantially similar cases.[111]
"Because ... [this court is] committed to the proposition that discipline is not imposed as punishment for the misconduct,... our primary concern is with protecting *1066 the public and deterring other lawyers from similar misconduct. The severity of the sanction should be calculated to achieve these ends."[112] "[T]he fact that the sanction imposed... is to some extent punitive does not render the sanction inappropriate."[113]
Upon a determination of misconduct, "a lawyer is subject to sanctions of disbarment, suspension, reprimand, censure, admonition, and probation which may include [restitution, assessment of costs,] limitation upon practice, appointment of a receiver, retaking the bar examination or professional responsibility test, attendance at continuing legal education courses, and any other reasonable requirement of [this] court or of the Disciplinary Board."[114]
Both requirementsthe 18-month suspension and the condition that following the suspension Respondent be supervised by an attorney licensed to practice law in the State of Washingtonare designed to protect the public and assist Respondent in overcoming the behaviors which resulted in his discipline in this and prior instances.
The sanction imposed is not clearly excessive. It is supported by the record and is not based upon other considerations.[115]
Respondent Juarez argues that the requirement for supervision of his future practice by a lawyer licensed to practice in the State of Washington is unfair and indeed unworkable. His argument is summarized as follows:[116]
Mr. Juarez represents criminal defendants in federal courts only. He always hires local counsel who takes care of deadlines and makes sure that rules regarding procedures are followed....
Respondent always hires local counsel, and will continue to do so. He will agree that, with cases in Washington, he will always hire local counsel.
The hearing officer recommended and the Board adopted the recommendation that Washington impose a requirement of Washington licensed co-counsel for respondent's practice in any courts. This requirement raises some Supremacy Clause, as well as enforcement and monitoring issues. Only federal courts can act to impose conditions upon Mr. Juarez's practice in those courts and/or condition his reinstatement as they think appropriate. The Supremacy Clause prohibits a Washington State Court from telling federal courts how to regulate Practice within their jurisdiction.
In addition, the Disciplinary Board's recommendation requires that Mr. Juarez have a Washington lawyer as a practice monitor to make sure that Mr. Juarez's practice will avoid future problems. If the Court imposes this condition it will end Mr. Juarez's practice. No Washington lawyer would agree to monitor Mr. Juarez's practice in, for example, Colorado or New Mexico. Since finding such a monitor would be impossible, this requirement must be stricken.
In his testimony before the hearing officer, Respondent indicated that he resides in Espanola, New Mexico; that he was initially admitted to practice in Washington State in October 1974, but closed out his practice in Washington in December 1994; that his Washington practice was primarily criminal;[117] that his law practice is "basically exclusively federal drug cases ... [and] *1067 maybe some serious other felonies" in federal courts "all over the United States."[118]
Apparently Respondent maintains that because he no longer lives in Washington and no longer practices in the Washington State courts, but practices exclusively in federal courts throughout the United States, he should not be subject to supervision by a lawyer licensed to practice in the State of Washington. He argues that this requirement somehow violates the Supremacy Clause and that the Washington Supreme Court may not determine the rules for practice in the federal courts. This argument is totally without merit.
There is an inherent illogic in Respondent's thesis. He has not indicated he is licensed to practice in any other state than Washington. The federal courts do not have an examination system for lawyers,[119] but most do have discipline rules.[120] Admission to practice in the federal courts is based upon current active membership in a State bar association. Unless he is licensed to practice in the District of Columbia or another state or territory than Washington, Respondent would not be permitted to practice in any federal court without current active membership in good standing in the Washington State Bar.[121] Although he broadly asserts he practices criminal law in federal courts throughout the United States, Respondent's counsel in oral argument acknowledged that his permission to practice in any United States court is based solely upon his membership in good standing of the Washington State Bar.
As an incident to his discipline by the Washington State Bar and the Washington State Supreme Court, the only logical supervision of Respondent's practice would be by another active member of the Washington State Bar. Respondent has not identified any lawyer licensed to practice in another state willing to undertake responsibility for his supervision and accountability for necessary monitoring to the Washington State Bar or the Washington Supreme Court.
Respondent asks this court to allow him to return following his suspension to the practice of law as a member in good standing of the Washington State Bar without any supervision or to allow him to choose his own supervisor from lawyers practicing in a state other than Washington. We reject this approach. This request is inconsistent with Respondent's demonstrated inability in the past to take direct responsibility for his own conduct in the active practice of law.

SUMMARY AND CONCLUSIONS
Respondent Santiago Eduardo Juarez became eligible to practice before the courts of Washington State upon his admission to the Washington State Bar on October 25, 1974. He then became eligible to practice in the United States Courts, upon application, based upon his status as a member in good standing of the Washington State Bar.
In this proceeding Respondent asks this court to determine whether the majority of the Disciplinary Board of the Washington State Bar Association in its order dated November 29, 1999 properly recommended to the Supreme Court that Respondent be suspended from the practice of law for 18 months and, following that period, that he be *1068 allowed to resume the practice of law only under supervision of another lawyer who is a member of the Washington State Bar.
Respondent Juarez is not eligible to practice in the United States Courts while he is under suspension by the Washington State Bar and the Washington Supreme Court. He would be eligible to resume active membership in the Washington State Bar upon expiration of the 18 month suspension, but only under supervision of another lawyer who is a member of the Washington State Bar. He may be eligible to practice in the United States Courts, upon application, based upon his status as a member in good standing of the Washington State Bar.
The findings of fact were supported by a clear preponderance of evidence and the conclusions of law were supported by the findings of fact.
The sanction of 18 months was proper because Respondent violated his ethical duties under the Rules of Professional Conduct, acted knowingly, demonstrated a pattern of misconduct by his neglect of deadlines and lack of diligence in performing his duties, causing actual and serious potential injury to his clients and to the legal profession. The presumptive sanction of suspension for 18 months, under the ABA Standards for Imposing Lawyer Sanctions, is not overcome by balancing the aggravating and mitigating factors or under the "Noble factors."
A requirement that upon expiration of his 18 month suspension Respondent resume the practice of law only under supervision of another lawyer licensed to practice in the State of Washington is an appropriate sanction under the totality of circumstances in this case.
We approve the sanction recommended by the Disciplinary Board of the Washington State Bar Association to suspend Respondent Santiago Eduardo Juarez from the practice of law for 18 months followed by a period of probation conditioned upon his practicing law only under the supervision of another attorney licensed to practice in the State of Washington and an assessment of costs and expenses associated with this disciplinary proceeding. Because neither the Board not the Bar Association recommends a duration for the supervised probation, we determine the duration should be twelve months following the expiration of Petitioner's suspension.
JOHNSON, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ., concur.
MADSEN, J., concurred and dissented, filed an opinion, joined by ALEXANDER, C.J., and SANDERS, J.
MADSEN, J. (concurring/dissenting).
While I agree with the majority in most respects, I do not agree that two years of supervision by an attorney licensed to practice law in Washington is an appropriate sanction. Given the purposes of attorney discipline, the practicalities of the situation, and the fact that federal courts have their own rules of admission, practice, and discipline, I believe the more appropriate way to assure that Santiago Eduardo Juarez acts in a responsible manner upon reinstatement is to require that for two years he associate counsel in all cases and certify on a regular basis, under oath, that he has complied with the association requirement.
At the disciplinary hearing, Juarez testified that he now lives in New Mexico, and "principally do[es] a federal drug practice" and "[m]aybe some serious other felonies." Verbatim Report of Proceedings (RP) at 189 (Oct. 22, 1998.) He testified this practice takes him "all around the United States." Id. The hearing was continued in order to separately address sanctions. At the hearing considering sanctions, Juarez stated that at present he always retains co-counsel: "In my federal cases I have cocounsel; in my State cases I have cocounsel." RP at 46 (Feb. 24, 1999.) The hearing examiner's conclusion of law 2.12 on sanctions, which contains the recommendation for two years of supervision, states that Juarez "no longer practices or resides in the State of Washington. How and to what extent [Juarez] practices law at this time is unknown." Clerk's Papers (CP) at 75. Juarez's motion to amend the hearing examiner's decision on sanctions states that Juarez "represents criminal defendants in *1069 federal courts only." CP at 82. While the record shows the issue to be a little unclear, it appears plain enough that Juarez's practice since leaving Washington has principally involved practice in federal courts in more than one state.
This court has plenary authority over attorney discipline cases, and thus has the ultimate authority for determining appropriate sanctions. In re Disciplinary Proceeding Against Anschell, 141 Wash.2d 593, 607, 9 P.3d 193 (2000); In re Discipline Proceeding Against Haskell, 136 Wash.2d 300, 317, 962 P.2d 813 (1998). The Disciplinary Board's sanction is adopted unless a specific reason exists to depart from that sanction and the court is persuaded that the sanction is inappropriate in light of certain factors. In re Discipline of Anschell, 141 Wash.2d at 607, 9 P.3d 193; see In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 667 P.2d 608 (1983). Considering the relevant factors, Juarez's practice in federal courts around the country provides reason to alter the Board's sanction of two years of supervision by a Washington attorney.
The first factor is whether the sanction serves the purposes of attorney discipline: protection of the public and deterrence of similar misconduct by other attorneys. In re Discipline of Anschell, 141 Wash.2d at 607, 9 P.3d 193. Protecting the public has a broad implication protecting anyone represented by a Washington-licensed attorney. It also has a narrower implication, involving this court's jurisdiction to and obligation to protect the people of this state from attorney misconduct. This narrower sense is reflected in reciprocity rules that enable imposition of sanctions within the jurisdiction as a means of protecting citizens from attorney misconduct in another jurisdiction. See, e.g., RLD 12.6.
In this case, neither the broad nor the narrow aspect of public protection is furthered by the supervision requirement. Juarez's recent practice has involved practice largely, if not exclusively, in federal courts, including courts in a number of other states, and nothing in the record suggests this practice is likely to change upon reinstatement. There is no uniformity of rules for admission, practice, and discipline in the federal courts, as is universally recognized. See, e.g., Judith A. McMorrow, The (F)Utility of Rules: Regulating Attorney Conduct in Federal Court Practice, SF13 ALI-ABA 317 (2000); Philip K. Lyon & Bruce H. Phillips, Professional Responsibility in the Federal Courts: Consistency is Cloaked in Confusion, 50 Ark. L.Rev. 59, 69 (1997); 16A Charles Alan Wright, Arthur A. Miller & Edward H. Cooper, Federal Practice & Procedure § 3992 (3d ed.1999). In fact, as to discipline, a federal district court's ability to impose ethical standards on attorneys practicing before it is a matter exclusively within the federal court's inherent power. In re Snyder, 472 U.S. 634, 643, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985); see 50 Ark. L.Rev. at 69-73.
Thus, the supervision requirement is inappropriate because a Washington licensed attorney is unlikely to be familiar with the local rules of federal district courts outside Washington. This is in contrast to local counsel, with whom Juarez could be required to associate. Protection of the public, in the broad sense, is better served by requiring Juarez to associate with counsel in all jurisdictions where he practices, rather than be supervised by a Washington licensed attorney.
As to protection of this state's citizens, members of the public involved in this state's criminal justice system will be just as protected by a requirement that counsel be associated as they would by the requirement that Juarez be supervised by a Washington attorney.
Another factor to consider in deciding whether sanctions are appropriate is whether the sanction is clearly excessive. In re Discipline of Anschell, 141 Wash.2d at 607, 9 P.3d 193. The reason given for the two-year supervision requirement is to ensure that Juarez not continue to violate his ethical obligations, with those violations consisting of neglect of client matters outside the courtroom and neglect of professional responsibilities to Washington's court system, to the Washington State Bar Association, and to other counsel attempting to assist former clients. Majority at 1053 (quoting hearing officer's conclusion of law 2.12); majority at 1054. These goals can be served *1070 just as well by requiring Juarez to associate with local counsel in every case. Requiring, instead, that he be supervised by a Washington licensed attorney is excessive under the circumstances because it will, as a practical matter, be difficult logistically as well as overly burdensome financially, given Juarez's practice in multiple states. And it will provide no more in the way of assuring resolution of Juarez's ethical problems than requiring association with local counsel and certification of compliance would.[1]
Under the circumstances in this case, I conclude that the supervision requirement is an inappropriate sanction. Accordingly, I dissent in part.
ALEXANDER, C.J., and SANDERS, J., concur.
NOTES
[1] Clerk's Papers at 1.
[2] Clerk's Papers at 1-16. The complaint involved three client matters: the Joaquin Vaca (aka Joaquin Baca-Amescua) Matter, the James Dorsey Matter, and the James Neal Suichang Matter. Disciplinary Counsel dismissed the counts relating to the James Dorsey Matter. The complaint also involved three personal matters: Respondent's Traffic Matter, in which he did not appear at scheduled hearings in the Renton Municipal Court for two traffic citations he received for driving with a suspended license; Respondent's Prior Suspension Matter relating to his duties upon signing a stipulation agreeing to suspension from the practice of law for one year, effective February 15, 1995, based upon grievances filed by Joaquin Vaca (aka Joaquin Baca-Amescua), Ms. Susan Mann and Francisco Guizar Guizar; and Respondent's Unfitness to Practice Law Matter, in which Disciplinary Counsel contended the facts of this disciplinary proceeding, in conjunction with Respondent's prior suspension from the practice of law for one year in 1995-96, and his admonition in 1990 for erroneously using the returned Immigration Naturalization Service bond funds of a client, demonstrates he is unfit to practice law. Id. at 35-45; see Santiago Juarez H'rg Exs. at G 1
[3] Id. at 32 and 35.
[4] Counts V and VI relating to the dismissed Dorsey Matter are not included.
[5] Clerk's Papers at 1-16.
[6] Id. at 33 and 34 (A bifurcated proceeding begins with a fact-finding hearing. After findings of fact and conclusions of law are filed, if misconduct is found, a second proceeding is held to determine the appropriate sanction recommendation.). See RLD 4.12(b)(1) and (2).
[7] Clerk's Papers at 35-45.
[8] Findings of Fact 1.2 lists the remaining counts of the Complaint: Count I, II, III, IV, VII, VIII, IX, X and XI. Findings of Fact 1.3 states: "During the hearing the hearing officer made rulings on attorney-client privileges asserted by a witness, Sheryl Gordon McCloud, with respect to matters pertaining to a client of hers who was represented by respondent at different times. Ms. McCloud was represented by her counsel, Allen Bentley, Esq. of the Washington Association of Criminal Defense Lawyers Strike Force. The hearing officer sustained the assertion of privilege." Findings of Fact 1.4 states: "Testimony was offered in this case by respondent, Frank Calero [a lawyer and associate of Respondent who appeared in Renton Municipal Court on his behalf in Respondent's Traffic Matter], Suzanne Elliot, Anne Seidel and Sheryl Gordon McCloud." Id. at 35-36.
[9] The hearing officer spells Respondent's client's name "James Neal Siuchang" while the formal complaint spells it "James Neal Suichang."
[10] The bracketed italicized sentence was stricken by "Order on Respondent's Motion to Modify, Amend and Correct Findings, Conclusions and Recommendation" dated February 22, 1999. In its place, Hearing Officer Fletcher substituted the following sentence: "The jury instructions in Mr. Siuchang's case were insufficient in that they did not exclude the police informant as a person with whom Mr. Siuchang could have conspired." Clerk's Papers at 70.
[11] Id. at 35-43.
[12] Id. at 43-44.
[13] Id. at 44.
[14] Id. at 71.
[15] Id. at 71-76.
[16] Respondent does not challenge the duration of his "probation." However, RLD 5.2(a) limits probation "for a fixed period not in excess of 2 years, under such conditions as may appear appropriate."
[17] By "Order on Respondent's Motion to Amend Hearing Officer's Sanctioning Decision" dated May 26, 1999, Hearing Officer Fletcher denied Respondent's motion to amend the sanction recommendation on Count VII, stating in pertinent part:

[It was] assumed Respondent had permission of his client to delay perfection of the appeal. However, that does not excuse Respondent for his failure to seek approval of the Court of Appeals in extending perfection of the appeal. Respondent had a duty to the Court as well as to his client.... Respondent also observes, correctly, that the Hearing Officer did not discuss mitigating factors in the sanction decision. Respondent claims that the delay in the Bar Association's prosecution prejudiced him.
The Hearing Officer does not believe this is a mitigating factor. Respondent requested time to obtain counsel to represent him in this matter.... The investigation in certain of the charges against Respondent was due to his failure timely to provide responses. Under these circumstances, delay of the prosecution of the case against him cannot be seen to be prejudicial to Respondent. Clerk's Papers at 90-91.
[18] Id. at 92.
[19] Id.
[20] The order indicated the vote as 11-1. Report of Proceedings, Disciplinary Bd. of the Wash. State Bar Ass'n (Nov. 19, 1999) at 1.
[21] Disciplinary Bd. Dissent, Disciplinary Bd. of the Wash. State Bar Ass'n, Bar Number 5686, dated February 22, 2000.
[22] Clerk's Papers at 93.
[23] "Order Assessing Costs and Expenses," Disciplinary Bd. of the Wash. State Bar Ass'n, Bar Number 5686, dated February 3, 2000.
[24] Br. of Resp't at 1.
[25] Id. at 10.
[26] Respondent argues the appropriate presumptive sanction for the violations found in Counts II, IV, VII, VIII and IX is at most a reprimand based upon a standard of negligence and unknowing conduct. Id. at 21-23. He asserts that a sanction less severe than a reprimand is proper for Count III. See id. at 15-16 and 18.
[27] Resp't's Reply Br. at 6.
[28] Answering Br. of the Wash. State Bar Ass'n at 1.
[29] See id. at 29 and 35-36.
[30] In re Anschell, 141 Wash.2d 593, 605, 9 P.3d 193 (2000) ("`an appeal of the disciplinary Board's decision carries with it the chance that we might increase the recommended sanction...'" (quoting In re Discipline of Dann, 136 Wash.2d 67, 84-85, 960 P.2d 416 (1998))).
[31] The hearing officer determined that Count I should be dismissed; Counts II, III, IV, VII, VIII and IX were proven; Counts V and VI were dismissed by Disciplinary Counsel; Count X was not proven; and Count XI should await further consideration of argument by counsel. Clerk's Papers at 43-45.
[32] See Br. of Resp't at 23.
[33] In re Boelter, 139 Wash.2d 81, 89, 985 P.2d 328 (1999); see also In re McMullen, 127 Wash.2d 150, 162, 896 P.2d 1281 (1995).
[34] In re Halverson, 140 Wash.2d 475, 483, 998 P.2d 833 (2000); see also In re McMullen, 127 Wash.2d at 162, 896 P.2d 1281.
[35] Id.
[36] In re Haskell, 136 Wash.2d 300, 311, 962 P.2d 813 (1998).
[37] In re Tasker, 141 Wash.2d 557, 565, 9 P.3d 822 (2000).
[38] In re Dann, 136 Wash.2d at 84, 960 P.2d 416 (The Disciplinary Board, as "`the only body to hear the full range of disciplinary matters, ... has the opportunity to develop unique experience and perspective in the administration of sanctions. We should not lightly depart from recommendations shaped by this experience and perspective.'" (quoting In re Noble, 100 Wash.2d 88, 94, 667 P.2d 608 (1983))).
[39] RLD 2.1; In re Tasker, 141 Wash.2d at 565, 9 P.3d 822.
[40] In re Anschell, 141 Wash.2d at 607-08, 9 P.3d 193.
[41] In re Johnson, 114 Wash.2d 737, 745-46, 790 P.2d 1227 (1990).
[42] Id.; In re Halverson, 140 Wash.2d at 493, 998 P.2d 833; but see RLD 5.1(b).
[43] In re Halverson, 140 Wash.2d at 494-95, 998 P.2d 833.
[44] Id. at 495, 998 P.2d 833.
[45] Id. at 497, 998 P.2d 833.
[46] In re Huddleston, 137 Wash.2d 560, 573, 974 P.2d 325 (1999).
[47] Id. at 573, 974 P.2d 325; see also In re McGough, 115 Wash.2d 1, 11, 793 P.2d 430 (1990).
[48] Clerk's Papers at 74-75.
[49] Br. of Resp't at 10.
[50] Answering Br. of Wash. State Bar Ass'n at 16.
[51] See Br. of Resp't at 10.
[52] Id. at 16.
[53] According to the Bar Association, another serious violation is Count VII (lack of diligence in handling the Suichang appeal). Answering Br. of Wash. State Bar Ass'n at 16.
[54] Clerk's Papers at 72.
[55] Id. at 39.
[56] Br. of Resp't at 10 and 14.
[57] Answering Br. of Wash. State Bar Ass'n at 17.
[58] The Bar Association argues Respondent's actions in "failing to file an appeal brief, or motion for an extension ... [prior to expiration of deadlines imposed by the Court of Appeals] created substantial potential injury to Siuchang in two ways: (1) any delay in the appeal process after issuance of the Pacheco decision potentially delayed Siuchang's release from prison, and (2) any failure to meet the clear demands of the Court of Appeals, repeatedly frustrated by Juarez' dilatory tactics, had the potential to result in the dismissal of Siuchang's appeal." Id. at 18-19.
[59] Br. of Resp't at 15.
[60] Id. at 14.
[61] Clerk's Papers at 74-75.
[62] In re Anschell, 141 Wash.2d at 610, 9 P.3d 193 (citing In re McMullen, 127 Wash.2d at 169, 896 P.2d 1281).
[63] Id.
[64] Id. (quoting ABA Standards Definitions at 7).
[65] In re Dann, 136 Wash.2d at 80, 960 P.2d 416.
[66] In re Anschell, 141 Wash.2d at 610, 9 P.3d 193 (quoting ABA Standards Definitions at 7).
[67] Clerk's Papers at 74-75.
[68] In re Halverson, 140 Wash.2d at 492-93, 998 P.2d 833 (quoting ABA Standards for Imposing Lawyer Sanctions Definitions at 7).
[69] In re Anschell, 141 Wash.2d at 611, 9 P.3d 193 (quoting In re Dann, 136 Wash.2d at 79, 960 P.2d 416).
[70] ABA Standard 4.42 and 5.14.
[71] ABA Standard 7.3.
[72] ABA Standards 5.13 and 7.3.
[73] In re Petersen, 120 Wash.2d 833, 854, 846 P.2d 1330 (1993).
[74] In re Johnson, 114 Wash.2d at 745, 790 P.2d 1227.
[75] Clerk's Papers at 75.
[76] Id.
[77] Br. of Resp't at 25-26.
[78] Respondent also denies he had at any time a "`dishonest or selfish motive,' ... a `pattern of misconduct[,]' ... [or] any actions involving what disciplinary counsel describes as a `bad faith obstruction of the disciplinary proceeding' because of his delay in complying with the rules." However, he does admit to having "procrastinated as shown by this record." Id. at 26.
[79] In re Anschell, 141 Wash.2d at 615, 9 P.3d 193 (citing In re Halverson, 140 Wash.2d 475, 998 P.2d 833 (2000) for the proposition that sexual relationships with six clients constituted a pattern of misconduct; In re McMullen, 127 Wash.2d at 171, 896 P.2d 1281 (multiple violations as to one client is not a pattern of misconduct)).
[80] Br. of Resp't at 25.
[81] Id.
[82] See In re Clark, 99 Wash.2d 702, 663 P.2d 1339 (1983) (A lawyer's prior record of professional misconduct, including a nine-year-old admonition, was considered in determining a serious pattern of neglect warranting a 60 day suspension).
[83] Respondent also attempted to explain the reasons behind his approach to the Suichang case which included: "delay is the defense's best friend"; Disciplinary Counsel did not prove Mr. Suichang did not consent to the strategy of delay to obtain a new trial first before appealing; "the difficulties in criminal appellate practice"; and the record contains no evidence of "other neglect" committed by Respondent. Br. of Resp't at 27-31.
[84] In re Curran, 115 Wash.2d 747, 774, 801 P.2d 962 (1990).
[85] See ABA Standards 9.32(i).
[86] Clerk's Papers at 80-81.
[87] Id. at 90-91.
[88] "Respondent requested time to obtain counsel to represent him in this matter.... The investigation in certain of the charges against Respondent was due to his failure timely to provide responses." Id.
[89] In re Huddleston, 137 Wash.2d at 576, 974 P.2d 325 (A more than two-year delay in an attorney's disciplinary proceeding was not a mitigating factor in ascertaining the proper sanction where the attorney was not prejudiced by the delay, but benefited from it.)
[90] Br. of Resp't at 31; see ABA Standards 9.32(j).
[91] Resp't's Reply Br. at 6.
[92] Answering Br. of the Wash. State Bar Ass'n at 28 (quoting In re McGough, 115 Wash.2d at 16, 793 P.2d 430).
[93] In re Huddleston, 137 Wash.2d at 576, 974 P.2d 325.
[94] Id. (quoting In re Dann, 136 Wash.2d at 83-84, 960 P.2d 416).
[95] 141 Wash.2d 557, 9 P.3d 822 (2000).
[96] Resp't's Reply Br. at 5-6.
[97] In re Tasker, 141 Wash.2d at 568, 9 P.3d 822.
[98] In re Noble, 100 Wash.2d 88, 95-96, 667 P.2d 608 (1983).
[99] In re Halverson, 140 Wash.2d at 498, 998 P.2d 833 (citing ABA Standards 1.1 and commentary); McMullen, 127 Wash.2d at 163, 896 P.2d 1281.
[100] In re Gillingham, 126 Wash.2d 454, 469, 896 P.2d 656 (1995) (citing In re Johnson, 118 Wash.2d at 704, 826 P.2d 186).
[101] Br. of Resp't at 23-24.
[102] Answering Br. of the Wash. State Bar Ass'n at 31-33.
[103] 116 Wash.2d 293, 804 P.2d 30 (1991).
[104] 107 Wash.2d 335, 728 P.2d 595 (1986).
[105] In re Hankin, 116 Wash.2d at 308, 804 P.2d 30.
[106] In re Talbot, 107 Wash.2d at 335-36, 728 P.2d 595.
[107] See In re Anschell, 141 Wash.2d at 616, 9 P.3d 193 ("Talbot stands in stark contrast to the vast majority of `lack of diligence' cases in which we have imposed suspensions of varying lengths of two years or less, even when there have been multiple instances of misconduct."); see also In re Zderic, 92 Wash.2d 777, 600 P.2d 1297 (1979) (Attorney neglected 10 client matters and mishandled retainer fees.)
[108] In re Jamieson, 98 Wash.2d 865, 868, 658 P.2d 1244 (1983) (citing In re Johnson, 94 Wash.2d at 662, 618 P.2d 1322; In re Vandercook, 78 Wash.2d 301, 304, 474 P.2d 106 (1970)).
[109] In re Anschell, 141 Wash.2d at 616-17, 9 P.3d 193 (citing In re Johnson, 94 Wash.2d 659, 618 P.2d 1322 (1980) (60 day suspension where attorney had received a prior reprimand for neglecting legal matters); In re Jamieson, 98 Wash.2d 865, 658 P.2d 1244 (1983) (60 day suspension for prolonged neglect of a probate matter, even after being contacted six times by the Department of Revenue concerning the case, and each time failing to respond); In re Loomos, 90 Wash.2d 98, 579 P.2d 350 (1978) (30 day suspension for failing to complete a probate as agreed); In re Yates, 78 Wash.2d 243, 473 P.2d 402 (1970) (45 day suspension where attorney received a prior reprimand and censure for neglect of client matters); In re Yates, 90 Wash.2d 767, 585 P.2d 1164 (1978) (one-year suspension for neglect of several client matters, plus multiple instances of prior similar conduct); In re Kennedy, 97 Wash.2d 719, 649 P.2d 110 (1982) (60 day suspension for multiple instances of neglect, including failure to arrive in court when expected, and failure to notify client that summary judgment had been granted in a case); In re Greenlee, 82 Wash.2d 390, 510 P.2d 1120 (1973) (30 day suspension for failure to promptly probate an estate); In re Vandercook, 78 Wash.2d 301, 474 P.2d 106 (1970) (30 day suspension for neglect and delay in handling divorce action where attorney had been disciplined on three prior occasions for similar misconduct); In re Burtch, 112 Wash.2d 19, 770 P.2d 174 (1989) (45 day suspension for pattern of misconduct involving three violations of RPC 1.5(b) (failure to communicate fees); six violations of RPC 1.3 and 3.2 (lack of diligence and failure to expedite litigation); two violations of RPC 1.4 (failure to keep client fully informed); two violations of RPC 1.15(d) (failure to return client documents and unearned fees); one violation of RLD 13.3 (failure to file a timely trust account declaration) and; one violation of RLD 2.8 (failure to cooperate with disciplinary investigation). The sanction was reduced by the mitigating factor of the attorney's financial turmoil); In re Felice, 112 Wash.2d 520, 772 P.2d 505 (1989) (30 day suspension for attorney's neglect of guardianship duties, even after being informed by DSHS of the deplorable conditions in which his ward was living); In re Nelson, 87 Wash.2d 77, 549 P.2d 21 (1976) (60 day suspension for neglect of four client matters); In re Witteman, 108 Wash.2d 281, 737 P.2d 1268 (1987) (two-year suspension for multiple counts of intentional neglect and misrepresentation where attorney had three prior disciplinary actions for similar conduct)).
[110] In re Jamieson, 98 Wash.2d at 868, 658 P.2d 1244 (citing In re Kumbera, 91 Wash.2d 401, 404, 588 P.2d 1167 (1979)).
[111] In re Anschell, 141 Wash.2d 593, 9 P.3d 193 (2000) (two-year suspension and two years' supervised probation for neglect of multiple client matters and not promptly providing a written response to requests by disciplinary counsel); In re Witteman, 108 Wash.2d 281, 737 P.2d 1268 (1987) (two-year suspension and two years' supervised probation for multiple counts of intentional neglect and misrepresentation where attorney had three prior disciplinary actions for similar conduct).
[112] In re Noble, 100 Wash.2d at 95, 667 P.2d 608.
[113] In re McGough, 115 Wash.2d at 18, 793 P.2d 430.
[114] In re Hankin, 116 Wash.2d at 298, 804 P.2d 30 (emphasis added) (see generally RLD Title 5; compare ABA Standards 2.1 2.8).
[115] The Disciplinary Board unanimously adopted the hearing officer's findings of fact, conclusions of law and recommendation that Respondent be suspended for 18 months. By a vote of 11-1, the Board with one dissent recommended that Respondent be permitted to practice law only on the condition that he be supervised by another lawyer licensed to practice law in Washington.
[116] Br. of Resp't at 32-33.
[117] Report of Proceedings, Disciplinary Bd. of the Wash. State Bar Ass'n (Oct. 22, 1998) at 164-69.
[118] Id. at 189.
[119] There is an examination and licensing procedure for admission to practice in the courts in the District of Columbia.
[120] See General Rule 2(e) United States District Court for the Western District of Washington which bases its standards upon the Rules of Professional Conduct promulgated by the Washington Supreme Court.
[121] See, for example, General Rule 2(b) United States District Court for the Western District of Washington which states: "Any attorney who is a member in good standing of the Washington State Bar, and any attorney who is a member in good standing of the bar of any state and who is employed by the United States or one of its agencies in a professional capacity and who, while being so employed may have occasion to appear in this court on behalf of the United States or one of its agencies, is eligible for admission to the bar of this court." GR 2(c)(1) provides that "Each applicant for admission to the bar of this court shall file with the clerk a written petition setting forth his residence and office addresses, his general and legal education, and by what courts he has been admitted to practice...." See also Federal Rule of Appellate Procedure for the Ninth Circuit 46.
[1] Another factor to consider in deciding the appropriateness of sanctions is whether the Board's decision was unanimous. In re Disciplinary Proceeding Against Anschell, 141 Wash.2d 593, 607, 9 P.3d 193 (2000). Here, it was not; one member dissented from the imposition of the supervision requirement.